**In re ATHOS STEEL AND ALUMINUM, INC., Debtor.**

**Barbara STANGER, et al, Plaintiffs,**

v.

**ATHOS STEEL ALUMINUM, INC., et al, Defendants.**

Bankruptcy No. 86–01486F.
Adv. Nos. 86–1145F, 86–1210F.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 16, 1987.

See also, D.C., 69 B.R. 515.

528

Eduardo C. Robreno, Marjorie L. McMahon, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for plaintiffs.

Franklin Poul, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, for David Wechsler and William J. Morehouse.

Myron A. Bloom, Adelman Lavine Krasny Gold & Levin, Philadelphia, for debtors, Athos Steel and Aluminum, Inc. and Athos Realty.

OPINION

BRUCE FOX, Bankruptcy Judge:

This is an action challenging the validity of a stock transfer involving two closely held corporations, one of which is presently a bankruptcy debtor. In order to more clearly describe the various issues raised by this case, it is helpful to first briefly set out the underlying transaction and the procedural history of the case. After doing so, I will address the threshold questions relating to this court's jurisdiction over the various claims and then set forth specific factual findings and legal conclusions pursuant to Bankr.Rule 7052.

## I.  FACTUAL BACKGROUND

This action was brought by minority shareholders of Athos Steel and Aluminum, Inc. ("Athos Steel") and minority shareholders of Athos Realty Co. ("Athos Realty"). Athos Steel is in the metals service center industry and engaged in the processing of steel and aluminum. Athos Realty owns and leases to Athos Steel the buildings, grounds, cranes, racks and one piece of machinery used by Athos Steel to conduct its business.

The plaintiffs seek to set aside a stock transaction entered into by Athos Steel on November 29, 1984. On that date, Augustus M. Ash ("Ash") and Lawrence Wechsler ("L. Wechsler"), the majority shareholders of both Athos Steel and Athos Realty, sold all their stock in both corporations to Athos Steel. One of the purposes of the transaction was to transfer control of the two corporations to David Wechsler ("D. Wechsler"), who was then chairman of the board of directors and treasurer of Athos Steel as well as president and member of the board of directors of Athos Realty [1].

The table below concisely summarizes the effect of the November 29, 1984 transaction:

### ATHOS STEEL

|  | Before Share – % | After Share – % |
|---|---|---|
| Lawrence R. Wechsler | 21,365 – 47.36% | – |
| Augustus M. Ash | 14,612 – 32.39% | – |
| David Wechsler | 9,023 – 20.00% | 9,023 – 98.75% |

1. David Wechsler is the son of Lawrence Wechsler.

|  | Before Share – % | After Share – % |
|---|---|---|
| Barbara Stanger | 57 – .13% | 57 – .62% |
| Robert C. Dunn | 57 – .13% | 57 – .62% |
| Total Outstanding | 45,114 – 100% | 9,137 – 100% |

### ATHOS REALTY

|  | Before Share – % | After Share – % |
|---|---|---|
| Lawrence R. Wechsler | 101 – 50.5% | – |
| Augustus M. Ash | 80 – 40.0% | – |
| David Wechsler | 9 – 4.5% | 9 – 4.5% |
| Robert Wechsler | 2 – 1.0% | 2 – 1.0% |
| Susan Stanger | 2 – 1.0% | 2 – 1.0% |
| Deborah Stanger | 2 – 1.0% | 2 – 1.0% |
| Tobie Stanger | 2 – 1.0% | 2 – 1.0% |
| Barbara Stanger | 1 – 0.5% | 1 – 0.5% |
| Leo Stanger | 1 – 0.5% | 1 – 0.5% |
| Athos Steel | — | 181 – 90.5% |
| Total Outstanding | 200 – 100% | 200 – 100% |

It is noteworthy that in the earlier stages of the negotiations which culminated in the November 29, 1984 agreement, the parties to the agreement had contemplated that each corporation would redeem its own shares from Ash and L. Wechsler. At some point, however, they realized that structuring the transaction in that fashion would have deprived D. Wechsler of majority control of Athos Realty since he would have held one share less than the combined holdings of the other Athos Realty shareholders. The proposed stock purchase was then restructured to provide for the sale of the Athos Realty stock to Athos Steel and the redemption by Athos Steel of its stock held by Ash and L. Wechsler.

## II. PROCEDURAL HISTORY

This lawsuit was initiated by the filing of a complaint in equity in the Court of Common Pleas, Philadelphia County, Pennsylvania, in May 1985. The plaintiffs who are minority shareholders of Athos Steel are Barbara Stanger and Robert Dunn. Ms. Stanger is the daughter of L. Wechsler and the sister of D. Wechsler. Mr. Dunn is a former employee of Athos Steel. The plaintiffs who are minority shareholders of Athos Realty are Leo Stanger, Barbara Stanger, Susan Stanger, Tobie Stanger, Deborah Stanger and Robert Wechsler.

Leo is the husband of Barbara Stanger; Susan, Tobie and Deborah are the children of Leo and Barbara. Robert Wechsler is Barbara's cousin.

Named as defendants were Athos Steel, Athos Realty and D. Wechsler. Also named as a defendant was William J. Morehouse, Esquire ("Morehouse"), who was described in the complaint as a director, secretary and legal counsel to Athos Steel and Realty.

The complaint contained six counts. The first four counts recited claims by the Athos Steel minority shareholders against Athos Steel, D. Wechsler and Morehouse. In count I, the shareholders asserted that the purchase of the Athos Realty shares by Athos Steel was an "unlawful acquisition" in violation of 15 P.S. § 1701. Count II complained of a failure to hold annual meetings, provide financial reports and inform shareholders of corporate actions; plaintiffs set forth a blanket allegation that the defendants had engaged in "unauthorized activities" which did not benefit the corporation over the previous ten years. Count III alleged a misappropriation of corporate funds or assets by D. Wechsler and Morehouse. Count IV alleged that the acquisition of the Athos Realty stock by Athos Steel was "wrongful" in that it was, *inter alia*, an imprudent expenditure of

corporate funds, without any proper business purpose, done in violation of the fiduciary obligation owed to the corporation by D. Wechsler and Morehouse.

Counts V and VI recited claims by the Athos Realty minority shareholders against Athos Realty, D. Wechsler and Morehouse. In count V, the plaintiffs alleged that the sale of the Athos Realty shares to Athos Steel was unlawful because: (a) the shares were not first offered to plaintiffs in violation of their contract rights; (b) the sale resulted from a conspiracy among the defendants to maintain D. Wechsler's control over Athos Realty; and (c) the sale violated the duties owed by D. Wechsler and Morehouse to the Athos Realty minority shareholders.

Count VI alleged that if Athos Realty had, in fact, redeemed its stock from L. Wechsler and Ash and then resold that stock to Athos Steel, such a transaction was improper in that it was concealed from plaintiffs pursuant to a conspiracy to maintain D. Wechsler's control over Athos Realty.

On March 31, 1986, Athos Steel filed a voluntary bankruptcy petition in this court under chapter 11 of the Bankruptcy Code. On June 27, 1986, the plaintiffs and defendants each filed an application to remove the Common Pleas action pursuant to 28 U.S.C. § 1452. Subsequently, the case was docketed in this court.[2]

This matter was called to trial on February 4, 1987. Prior to the commencement of testimony, the parties advised the court that they had resolved two preliminary matters by agreement: (1) one of the plaintiffs withdrew as a party[3] and (2) the remaining plaintiffs withdrew counts I, II, III and VI of their complaint.[4] The parties and the court then discussed certain issues regarding the nature of this court's jurisdiction. There was no dispute that the court has jurisdiction in this case with respect to claims asserted by the plaintiffs against the debtor, Athos Steel. *See* 28 U.S.C. §§ 1334(b), 157(b)(2). Less clear, however, was the basis of the exercise of jurisdiction over the non-debtor defendants. All the parties urged that, at a minimum, I find the claims against those defendants to be related proceedings, *see* 28 U.S.C. §§ 1334(b), 157(c)(1), and I took the jurisdictional issue under advisement. The plaintiffs then decided that they preferred to go forward with the trial and have the court decide the case with respect to the non-debtor defendants insofar as subject matter jurisdiction may exist; the defendants concurred in this arrangement. Finally, the plaintiffs took the position that to the extent this matter is a related proceeding, they would not consent to the entry of binding findings and judgment pursuant to 28 U.S.C. § 157(c)(2).

Trial of this case began on February 4, 1987 and was completed on February 5, 1987.

---

**2.** Since there were two separate applications to remand, the clerk docketed two adversary proceedings, Nos. 86–1145 and 86–1210. These two adversary proceedings are identical and are treated as such.

**3.** The plaintiff who dropped his claim was Jay Wechsler. He is the brother of D. Wechsler and was described in the complaint as an individual who was a shareholder of Athos Realty at the time of the sale of the stock to Athos Steel and whose shares had since devolved upon certain of the other plaintiffs.

**4.** The remaining counts requested the following relief, *inter alia:*

*Count IV*—a judgment in favor of Athos Steel against D. Wechsler and Morehouse for all funds expended or to be expended for the acquisition of the Athos Realty stock; a judgment in favor of the plaintiffs against Athos Steel, D.

Wechsler and Morehouse for punitive damages; and an order directing Athos Steel to transfer its interest in the Athos Realty stock to the persons found to be rightfully entitled to acquire the shares.

*Count V*—an order enjoining Athos Realty from transferring on its records the Ash and L. Wechsler stock to Athos Steel and directing Athos Realty to transfer the stock to plaintiffs, pro rata, upon their payment of the consideration established in the November 29, 1984 agreement; judgment in favor of the plaintiffs and against Athos Realty, D. Wechsler and Morehouse for punitive damages.

Count IV also requested an award of attorney's fees and costs against D. Wechsler, Morehouse and Athos Steel. Count V requested an award of attorney's fees and costs against D. Wechsler, Morehouse and Athos Realty.

### III. JURISDICTION

The threshold questions in this case are whether this court has jurisdiction over the claims asserted by the plaintiffs and, if so, whether this proceeding is a core or related proceeding, *see* 28 U.S.C. § 1334(b), 157(b), (c), or some combination thereof. These determinations are complicated somewhat by the rambling nature of the plaintiffs' pleading as well as the revisions and refinements which have occurred in plaintiffs' theory of their case since the outset of this litigation. Besides dropping all but counts IV and V of the complaint on the day of trial, plaintiffs appear to have withdrawn, during the trial, their request for compensatory and punitive damages against D. Wechsler and Morehouse and limited their requested relief to (1) the imposition of a constructive trust on the Athos Realty stock or specific enforcement on behalf of Athos Realty of a contract, allegedly made in March 1984, for redemption by Athos Realty of its corporate stock held by Ash and L. Wechsler and (2) a determination that the individual defendants are liable for plaintiffs' attorney's fees and costs.

■ As a general rule, federal courts refer to the facts which existed at the time of the filing of a complaint to determine whether subject matter jurisdiction exists. *E.g., Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 248 (7th Cir.1981); *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); *In re Coral Petroleum, Inc.,* 62 B.R. 699 (Bankr.S.D.Tex.1986). However, where the plaintiff has amended his complaint, courts have looked to the amended complaint in determining questions of federal subject matter jurisdiction.[5] *See Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 507–08 (5th Cir.1985).

In this case, I will treat plaintiffs' withdrawal of counts I, II, III and VI of the complaint as an amendment to the complaint. *See.* Fed.R.Civ.P. 15; Bankr.Rule 7015. Therefore, I will decide the jurisdictional issues on the basis of the complaint as it stood immediately prior to the commencement of the trial testimony. Because the remaining counts of the complaint (IV and V) involve distinct parties and legal theories, I must evaluate them separately.

#### A. *Count IV*

There is no dispute that count IV is a shareholder derivative action on behalf of Athos Steel by its minority shareholders, alleging a breach of fiduciary duties by D. Wechsler and Morehouse in their participation in the transaction which resulted in the sale of the Athos Realty stock to Athos Steel. The relief requested in the complaint included the transfer of the stock now owned by Athos Steel "to those persons whom the court deems to be rightfully entitled to acquire the shares" and a money judgment against D. Wechsler and Morehouse.

All the parties contend that to the extent the plaintiffs seek an order which would divest the debtor corporation of ownership of the Athos Realty stock, this matter should be treated as a core proceeding. The plaintiffs argue, though, that the relief requested against the individual defendants is a related proceeding. The defendants differ on the point and contend that core proceedings should be defined by focusing on the main issue in the case and suggest that since the relief requested against D. Wechsler and Morehouse is now relatively minor, the claim against those individuals should not affect the core status of the case.[6]

---

**5.** This rule is not woodenly applied. For example, federal jurisdiction in a case removed from state court is ordinarily based on the complaint as it existed at the time of removal. *IMFC Professional Services of Florida, Inc. v. Latin American Home Health, Inc.,* 676 F.2d 152, 157 (5th Cir.1982). This is to prevent a plaintiff whose case has been removed to federal court from amending the complaint for the purpose of destroying jurisdiction. *E.g., Boelens v. Redman Homes, Inc.,* 759 F.2d 504, 507 (5th Cir.

1985). This consideration is not applicable in the proceeding *sub judice* since the removal occurred at the behest of the plaintiffs as well as the defendants.

**6.** In making this argument in their post-trial memorandum of law, the defendants assumed that the core or noncore status of the case would be determined based on the posture of the case following trial, *i.e.,* that the damage claims against D. Wechsler and Morehouse

I differ with positions of both sides and conclude that plaintiffs' claims set forth in count IV are noncore matters in their entirety. Accordingly, I will issue proposed findings of fact and conclusions of law with respect to that claim. 28 U.S.C. § 157(c)(1).

This court's jurisdiction is based on 28 U.S.C. § 1334(b), which provides for district court jurisdiction of all proceedings arising under, arising in or related to a case under the Bankruptcy Code, and 28 U.S.C. § 157(a), which allows the district court to refer such proceedings to the bankruptcy court. In this district, the district court has exercised its power to refer cases to the bankruptcy court by standing order. *See Raff v. Gordon*, 58 B.R. 988, 991 n. 5 (E.D.Pa.1986). Under the jurisdictional scheme set out in section 1334(b), established by Congress in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*), there are three types of legal controversies which might conceivably arise in the bankruptcy court: (1) core proceedings, which may be heard and resolved by the bankruptcy court, *see* 28 U.S.C. § 157(b)(1); (2) noncore related proceedings, which the bankruptcy court may hear and submit proposed findings of fact and conclusions of law, *see* 28 U.S.C. § 157(c)(1); and (3) noncore, unrelated proceedings, which the bankruptcy court may not hear. *In re Bowling Green Truss, Inc.*, 53 B.R. 391 (Bankr.W.D.Ky.1985), *cited in, In re Globe Parcel Service, Inc.*, 71 B.R. 323, 325–26 (E.D.Pa.1987).

Congress has enumerated a non-exclusive list of core proceedings in 28 U.S.C. § 157(b)(2). Clauses (B) to (N) of section 157(b)(2) provide specific examples of core proceedings while clauses (A) and (O) set forth "catch-all" categories of uncertain scope.[7] *See In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986); King, *Jurisdiction and Procedure Under the Bankruptcy Amendments of 1984*, 38 Vanderbilt L.Rev. 675, 687–88 (1985); Taggert, *The New Bankruptcy Court System*, 59 Am.Bankr.L.J. 231, 242–43 (1985).

To evaluate whether count IV is core or noncore, it is first necessary to analyze the nature of the claim asserted. The litigants have treated count IV as if it were an action brought by nondebtor parties with an interest adverse to that of the corporate debtor, seeking to deprive the debtor of property of the estate. The parties liken count IV to a replevin action seeking to recover from the debtor the Athos Realty stock in its possession. Were this accurate, I would agree that count IV would be the equivalent of a claim against the estate and would fall within the specific provisions of 28 U.S.C. § 157(b)(2)(B) ("allowance or disallowance of claims against estate"). However, the parties have overlooked the significance of plaintiffs' status as shareholders asserting a derivative claim.

The primary attributes of a shareholders derivative action are: (1) the action is by the corporation and conducted by the shareholder as its representative; (2) the shareholder is a nominal plaintiff, as the corporation is the real party in interest; and (3) the corporation is a nominal defendant but the substantive claim belongs to the corporation. The shareholder cannot prevail unless there is, at the time the action is brought, a claim which could be enforced by the corporation if it so desired. 13 *Fletcher Cyclopedia of the Law of Private Corporations* §§ 5939, 5947 (rev. 1984) ("Fletcher"). Specifically, a corporation has a claim against its officers and directors for breach of a fiduciary duty and

raised in count IV were abandoned during trial and the plaintiffs' sole demand from them is for attorney's fees and costs. As noted above, I have not made the same assumption.

**7.** Section 157(b)(2) provides:

Core proceedings include but are not limited to—

(A) matters concerning the administration of the estate;

   .     .     .     .     .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security relationship, except personal injury tort or wrongful death claims.

a shareholder may assert such a claim derivatively. *See, e.g., Fitzpatrick v. Shay,* 314 Pa.Super. 450, 455–56, 461 A.2d 243, 246 (1983).

When analyzed in this fashion, count IV is not an action against the debtor by hostile entities, but rather is an action by the debtor against nondebtors. The debtor, through its shareholders acting derivatively,[8] is asserting a claim which is primarily in the nature of an action to rescind the contract ·for the purchase of Athos Realty stock.[9] The real jurisdictional issue, then is whether an action by the debtor for injunctive relief in the nature of rescission of a contract against a party which has not asserted a claim against the estate is a core or noncore proceeding.

The parties attempt to categorize this derivative action as falling within the scope of the general clauses of 28 U.S.C. § 157(b)(2)(A) and (O).[10] Since those clauses are not models of clarity, it is appropriate to focus upon the purposes of the core/noncore dichotomy to aid in evaluating whether count IV is a core proceeding. *See Matter of Rustic Manufacturing, Inc.,* 55 B.R. 25, 28 (Bankr.W.D.Wisc.1985). In doing so, I begin with the *Marathon* decision itself.

In *Marathon,* the Supreme Court held that the broad grant of jurisdiction to the bankruptcy courts contained in the Bankruptcy Reform Act of 1978 (formerly codified at 28 U.S.C. § 1471) was unconstitutional. Under that jurisdictional scheme, the bankruptcy courts were empowered to hear and issue final orders in proceedings "related to" bankruptcy cases. The plurality opinion was grounded in the doctrine of separation of powers and the constitutional requirement that the judicial power of the United States be exercised by judges who enjoy the protections afforded the federal juridicary under Article III of the Constitution. Justice Brennan's plurality opinion noted that the Court's precedents have validated the Congressional grant of judicial power upon non-Article III courts in matters involving "public rights," (a term not comprehensively defined in the opinion), but concluded that the full realm of cases assigned to the bankruptcy courts in the 1978 jurisdictional scheme exceeded the scope of the public rights doctrine.

> Appellants argue that a discharge in bankruptcy is indeed a "public right".... But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created rights, such as the right to recover contract damages that is at issue in this case. The former may well be a

---

8. I note that the defendants have not raised the question whether the shareholders of a debtor in possession may maintain a derivative action after the institution of a chapter 11 bankruptcy proceeding or whether their sole remedy is to seek the appointment of a trustee pursuant to 11 U.S.C. § 1104. *See generally Meyer v. Fleming,* 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); 13 Fletcher § 5985.1.

9. The theory of count IV is that the debtor's directors were guilty of self-dealing and breached their fiduciary obligation to the corporation by entering into this agreement. The true nature of this claim would have been more apparent (and this lawsuit would have been more conventional) had the Athos Steel shareholders also sued Ash and L. Wechsler—who, of course, were not only the sellers of the Athos Realty stock but who were also directors of Athos Steel at the time of the transaction. In light of my disposition of this matter, I do not reach the troubling question whether Ash and Wechsler are indispensable parties.

10. The defendants make two other arguments. They suggest that plaintiffs' action is a turnover proceeding. *See* 28 U.S.C. § 157(b)(2)(E). However, clause (E) refers to proceedings to turnover property of the estate to the trustee pursuant to 11 U.S.C. §§ 542, 543, which is not involved in count IV. The defendants also state that the case "implicates" the lien of Ash and L. Wechsler, since they retained a security interest on the Athos Realty stock as security for payment by the debtor of the purchase price, thereby "bringing into play" section 157(b)(2)(K). However, at no point in these proceedings have ᵗthe plaintiffs sought to modify either the purchase price or the lien to be retained by Ash and L. Wechsler; the plaintiffs have merely sought to modify the identity of the buyer. Indeed, as the defendants themselves argue later in their memorandum, this court would be without power to deprive Ash and L. Wechsler of their security interest or modify their lien as they are not parties to this action. Thus, section 157(b)(2)(K) is also not germane to count IV.

"public right," but the latter obviously is not.

458 U.S. at 71, 102 S.Ct. at 2871. The concurrence of Justice Rehnquist, joined by Justice O'Connor, also concluded that a lawsuit based upon a contract, involving claims which arise entirely under state law with no federal rule of decision, to the extent it may be heard in a federal court due to its relationship to a bankruptcy proceeding, must be adjudicated by an Article III court. 458 U.S. at 89–92, 102 S.Ct. at 2881–82.[11]

After the *Marathon* decision, the bankruptcy system functioned under the Emergency Rule recommended by the Judicial Conference of the United States and adopted as a local rule by the district courts, until the passage of The Bankruptcy Amendments and Federal Judgeship act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"). *See* 1 *Collier on Bankruptcy* ¶ 3.01, at 3–15 to 3–20 (15th ed. 1986). As one commentator has observed, "[t]he key function of the core-noncore distinction [established by BAFJA] is to separate proceedings in which non-Article III

Bankruptcy Judges may properly exercise broad powers from proceedings in which they are required by the Constitution to exercise only limited powers." Carlson, *Distinguishing Core from Noncore Proceedings,* Norton Bankr.Law Advisor (No. 1) 1, 2 (January 1985) ("Carlson"); *accord, Matter of Rustic Manufacturing, Inc.,* 55 B.R. at 28.

■ Based on my understanding of *Marathon* and subsequent Supreme Court decisions interpreting its holding,[12] I conclude that proceedings which involve a cause of action created solely by state law, brought by or on behalf of the debtor, and which do not otherwise fall within the provisions of 28 U.S.C. § 157(b)(2)(B)–(N), are noncore matters. *See In re Castlerock Properties,* 781 F.2d at 162; Carlson at 3–4.

■ The application of this conclusion to count IV means that count IV is a noncore matter. As a shareholder derivative action for breach of fidiciary obligation by directors, count IV is based entirely on claims created by Pennsylvania law and is the type of equity matter that is tradition-

---

**11.** The majority in *Marathon* also rejected the argument that the delegation of adjudicative functions to the bankruptcy court, as an adjunct to the district court, was consistent with the principle that the judicial power of the United States must be vested in Article III courts. Justice Brennan analyzed earlier cases and reasoned that while Congress may possess broad discretion to assign factfinding functions to an adjunct court in the aid of congressionally created statutory rights, it lacks the same degree of discretion with respect to the adjudication of rights not created by Congress. 458 U.S. at 82, 102 S.Ct. at 2877.

> [W]hen Congress creates a statutory right, it clearly has the discretion, in defining that right … [to] provide that persons seeking to vindicate that right must do so before particularized tribunals created to perform the specialized adjudicative tasks related to that right. Such provisions do, in a sense affect the exercise judicial power, but they are also incidental to Congress' power to define the right it has created. *No comparable justification exists, however, when the right being adjudicated is not of congressional creation.*

458 U.S. at 83–84, 102 S.Ct. at 2878 (emphasis added).

This is not to suggest, though, that Article I courts cannot make recommendations in noncore proceedings. *See generally United States v.*

*Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.1984) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). That constitutional issue is not before me.

**12.** In *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985), Justice O'Connor speaking for the majority of the Court stated:

> The Court's holding in [*Marathon* ] establishes … that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.

In *Commodity Futures Trading Commission v. Shor,* —— U.S. ——, 106 S.Ct. 3245, 3259, 92 L.Ed.2d 675 (1986), Justice O'Connor, again speaking for the majority, stated:

> The risk that Congress may have improperly encroached on the federal judiciary is … magnified when Congress "withdraw[s] from judicial cognizance any matter which, from its nature is the subject of a suit at the common law, or in equity, or admiralty" and which therefore has traditionally been tried in Article III courts, and allocates the decision of those matters to a non-Article III forum of its own creation.

ally tried in state court or, where nonbankruptcy federal jurisdiction exists, in an Article III court. *See Commodity Futures Trading Commission v. Schor*, — U.S. —, —, 106 S.Ct. 3245, 3259, 92 L.Ed.2d 675 (1986). *See generally* Prunty, *The Shareholders Derivative Suit: Notes On Its Derivation*, 32 N.Y.U.L.Rev. 980 (1957). Thus, as an action on behalf of the debtor to nullify or modify a sales contract and obtain damages from its directors, count IV is, in its entirety, a noncore related proceeding. *See Rosen-Novak Auto Co. v. Honz*, 783 F.2d 739, 743 (8th Cir.1986) (action by debtor to prevent cancellation of insurance policy based on principles of estoppel or waiver under state law held noncore); *In re Castlerock Properties*, 781 F.2d at 162 (state contract law claims which do not fall with 28 U.S.C. § 157(b)(2)(B)–(N) held noncore even if they arguably fall within section 157(b)(2)(A) or (O); *In re Pierce*, 44 B.R. 601, 602 (D.Colo. 1984) (contract action for injunctive relief held noncore). *See also Matter of Reading Co.*, 711 F.2d 509 (3d Cir.1983) (decided under prior Bankruptcy Act). *But see In re DeLorean Motor Co.*, 49 B.R. 900 (Bankr.E.D.Mich.1985) (action by corporate debtor against former officers and directors held core because adjudication considered essential to timely, effective liquidation of the estate).

### B. *Count V*

The determination of the nature of this court's jurisdiction with respect to count V is hindered by the complaint's extreme lack of clarity. The plaintiffs assert that count V states a derivative claim on behalf of Athos Realty. The defendants interpret count V solely as a direct claim asserting the personal rights of the Athos Realty shareholders. While the latter is by no means an unreasonable interpretation, I am prepared to treat count V, on its face, as stating both a derivative and a non-derivative claim.[13]

The legal theory of plaintiffs' derivative claim is that D. Wechsler and Morehouse breached their fiduciary obligation to Athos Realty by their participation in the transaction in which Ash and L. Wechsler sold their Athos Realty stock to Athos Steel. The debtor, Athos Steel, is described as a participant in this conspiracy and, presumably, so are D. Wechsler and Morehouse in their capacities as officers and directors of the debtor. The legal theory of the non-derivative claim is that the plaintiffs have a contractual right of first refusal as to the shares sold to Athos Steel. While not artfully pleaded, the request sought in the complaint includes a request that this court set aside the November 29, 1984 transaction and award damages.

■ To the extent the plaintiffs, acting derivatively or on their own behalf, seek to divest Athos Steel of its ownership of stock, the proceeding is core. *See* 28 U.S.C. § 157(b)(2)(B). However, to the extent the plaintiffs seek damages or a contribution of attorney's fees and costs from the nondebtor defendants, this claim is noncore and may not even be a related claim. In other words, the question is whether there is *any* bankruptcy court jurisdiction over a claim by a nondebtor against other non-debtors.

The Third Circuit Court of Appeals has held that the determination whether a civil proceeding is related to a bankruptcy case is based on "whether the outcome of that proceeding could conceivably have any ef-

---

**13.** As the defendants point out, there is no language asserting that count V was initiated on behalf of the Athos Realty. In addition, the relief requested includes an injunction against Athos Realty and a request for punitive damages against the corporation. On the other hand, count V can be read to seek redress of wrongs to Athos Realty and refers to violations of fiduciary obligations of D. Wechsler and Morehouse as officers and directors of Athos Realty. (Complaint ¶ 39(b), (c)). Moreover, the fact that Athos Realty was named as a defendant is perfectly consistent with a derivative action; in fact, the corporation must be named as a defendant in Pennsylvania. *Fitzpatrick v. Shay*, 314 Pa.Super. 450, 461 A.2d 243 (1983). In short, count V can fairly be read to state: (1) a non-derivative claim asserting that the sale of the shares to Athos Steel without being first offered to the Athos Realty minority shareholders violated plaintiffs' personal rights as shareholders and (2) a derivative claim asserting that the Athos Realty fiduciaries, acting in concert with Athos Steel, breached their obligation to Athos Realty.

fect on the estate being administered." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). An action is related if its outcome "could alter the debtor's rights, liabilities, options or freedom of action ... and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*

In count V, the claims against the individual defendants are based, at least in part, on their roles as officers and directors of the debtor. As the evidence at trial brought out, D. Wechsler and Morehouse would be entitled to be indemnified by the debtor pursuant to the debtor's by-laws if they were found liable. In this situation, the Third Circuit determined in *Pacor* that such a claim against a non-debtor would be related to the bankruptcy case. *Id.* at 995. Accordingly, I conclude that plaintiffs' claims against the individual defendants in count V are noncore related proceedings.[14]

In sum, count IV is a related claim against all defendants while count V is a core matter as to the debtor defendant, but only a related claim as to the individual defendants. Obviously, this bifurcation of treatment and the energies spent by the court and parties in analyzing the jurisdictional issues make difficult the prompt resolution of disputes required in bankruptcy cases. Nonetheless, I have no choice but to make recommendations to the district court with respect to the noncore aspects of this proceeding.

## IV. FINDINGS OF FACT

1. Plaintiffs Barbara Stanger and Robert C. Dunn are minority shareholders of Athos Steel.

2. Plaintiffs Leo Stanger, Barbara Stanger, Deborah Stanger, Susan Stanger, and Tobie Stanger are minority shareholders of Athos Realty.

3. Defendant D. Wechsler is Chairman of the Board of Directors and Treasurer of Athos Steel. At all relevant times, D. Wechsler was a member of the board of directors of Athos Steel.

4. D. Wechsler is President of Athos Realty and at all relevant times, was a member of its board of directors.

5. Defendant Morehouse is an attorney licensed to practice law in Pennsylvania and is a partner in the law firm of Wolf, Block, Schorr & Solis-Cohen ("Wolf Block").

6. Morehouse has been counsel to Athos Steel and Athos Realty since 1976. He has also been secretary of Athos Steel since 1976 and has been assistant secretary of Athos Realty since 1983.

7. Athos Steel is in the metals service center industry involved in the processing of steel and aluminum, primarily in coil form. It sells to a wide variety of manufacturers basically in a one hundred and fifty mile radius in the middle Atlantic states.

8. Athos Realty owns and maintains the building, grounds, cranes, racks, and one piece of machinery which it leases to Athos Steel.

9. The business of Athos Steel was founded in 1933 as a partnership formed by L. Wechsler and Clyde R. Markland. Shortly thereafter, Ash joined the partnership.

10. After Markland died in 1949, L. Wechsler held 60% of the partnership and Ash held the other 40%.

11. Subsequently, Ash and L. Wechsler formed two corporations: Athos Steel and Athos Realty, the latter being formed primarily for tax purposes.

---

**14.** One further point is noteworthy. Were the plaintiffs to have prevailed, under either count of their complaint, in divesting the debtor of ownership of the Athos Realty stock, it would not follow that the bankruptcy court would retain jurisdiction over the case to determine the disposition of the property. *See In re Murchison,* 54 B.R. 721 (Bankr.N.D.Tex.1985). While it might be desirable in the interest of judicial economy to make such a determination, judicial economy itself does not justify federal bankruptcy jurisdiction. *See In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985); *In re Diaconx Corp.,* 65 B.R. 139 (E.D.Pa.1986); *In re Xonics, Inc.,* 61 B.R. 818, 820–21 (N.D.Ill.1986); *In re Crystal Manufacturing & Packaging, Inc.,* 60 B.R. 816, 818–20 (N.D.Ill.1986); *In re John Peterson Motors, Inc.,* 56 B.R. 588 (Bankr.D.Minn.1986).

12. L. Wechsler is the father of D. Wechsler and plaintiff Barbara Stanger. Plaintiff Leo Stanger is Barbara Stanger's husband. Plaintiffs Susan, Tobie, and Deborah Stanger are the children of Leo and Barbara. Plaintiff Robert Wechsler is the cousin of D. Wechsler and Barbara Stanger. Plaintiff Robert Dunn is a former employee of Athos Steel.

13. As of November 28, 1984, the stock ownership of Athos Steel and Athos Realty was as follows:

| ATHOS STEEL | | |
|---|---|---|
| | Shares – % | |
| Lawrence R. Wechsler | 21,365 – | 47.36% |
| Augustus M. Ash | 14,612 – | 32.39% |
| David Wechsler | 9,023 – | 20.00% |
| Barbara Stanger | 57 – | .13% |
| Robert C. Dunn | 57 – | .13% |
| Total Outstanding | 45,114 – | 100% |

| ATHOS REALTY | | |
|---|---|---|
| | Shares – % | |
| Lawrence R. Wechsler | 101 – | 50.5% |
| Augustus M. Ash | 80 – | 40.0% |
| David Wechsler | 9 – | 4.5% |
| Robert Wechsler | 2 – | 1.0% |
| Susan Stanger | 2 – | 1.0% |
| Deborah Stanger | 2 – | 1.0% |
| Tobie Stanger | 2 – | 1.0% |
| Barbara Stanger | 1 – | 0.5% |
| Leo Stanger | 1 – | 0.5% |
| Athos Steel | – | |
| Total Outstanding | 200 – | 100% |

14. The Athos Steel shares held by Barbara Stanger and Robert Dunn were acquired through the conversion of a $1,000.00 convertible debenture.

15. The nineteen shares of Athos Realty not held by L. Wechsler and Ash were originally given as gifts by L. Wechsler to his three children, D. Wechsler, Barbara Stanger and Jay Wechsler.

16. Barbara Stanger in turn sold all but one of her shares to her brother, Jay Wechsler. He then gave his shares away as gifts to plaintiffs Susan Stanger, Deborah Stanger and Tobie Stanger, to plaintiff Leo Stanger and to plaintiff Robert Wechsler.

17. D. Wechsler acquired his stock in Athos Steel from Ash and L. Wechsler during the 1970's as a form of bonus in recognition of his work and contribution to the corporation.

18. It had been the intention of L. Wechsler since at least 1975 to transfer control of both corporations to D. Wechsler, the only one of his children active in the business, and to balance this by cash bequests to his other children.

19. In 1982 and 1983, Athos Steel suffered significant financial losses.

20. These losses can be attributed to the condition of the steel industry as a whole and a decision by Athos Steel to expand.

21. As a result of the financial setbacks, Athos Steel reduced personnel and cut back product lines.

22. On March 31, 1986, Athos Steel filed a voluntary petition under chapter 11 of the Bankruptcy Code in this court.

23. Some time in 1983, Ash and L. Wechsler decided that they wished to retire from the business. At the time, Ash was about 72 years old and L. Wechsler was 82 years old.

24. Negotiations commenced for the sale of Ash's and L. Wechsler's stock in both corporations. These negotiations lasted for over one year.

25. At all times during the negotiations, Ash and L. Wechsler's intent included transfer of control of the business involving both corporations to David Wechsler, the operating head of the business, who before the transaction already owned 20% of the stock of Athos Steel.

26. During these negotiations, various members of the same law firm represented the interested parties. Morehouse represented Athos Steel and Athos Realty. Charles Kopp, Esquire represented L. Wechsler. Gerald McConomy, Esquire and Lowell Dubrow, Esquire, represented Ash. Morehouse, Kopp, McConomy and Dubrow, at that time, were all members of the law firm of Wolf Block.

27. Initially, it was contemplated that Athos Steel and Athos Realty would each redeem its own shares from Ash and L. Wechsler.

28. Although correspondence among the parties and their representatives suggests that by March 30, 1984, the parties had agreed upon the price to be paid Ash and L. Wechsler for the shares of each corporation, a complete and final meeting of the minds was not reached at that time. This is evident from instructions given by L. Wechsler to the corporations' accountant by letter dated March 30, 1984 as well as changes in various terms as expressed in letters from D. Wechsler to the accountant dated April 16, 1984 and May 4, 1984. (Exhibits P–12, P–13, P–14).

29. Subsequent to March 30, 1984, the parties realized that structuring the transaction as a redemption would have deprived D. Wechsler of absolute control of Athos Realty since he would have held one share less than the combined holdings of the other Athos realty shareholders.

30. The proposed stock purchase was then structured to provide for the sale of the Athos Realty stock to Athos Steel and the redemption by Athos Steel of the Ash and L. Wechsler stock.

31. The agreement was consummated on November 29, 1984. The price was: (a) $14.00 per share for the stock of Athos Steel to both sellers; (b) $2,000.00 per share of L. Wechsler's Athos Realty stock; and (c) $1,500.00 per share of Ash's Athos Realty stock. Thus, L. Wechsler was to receive a total of $501,110.00, and Ash was to receive $324,568.00 (plus repayment of amounts he had loaned to Athos Steel).

32. By the time the transaction was closed, deposits had been received by Ash of $26,000.00 for his stock in Athos Steel and $30,000.00 for his stock in Athos Realty; and deposits had been received by L. Wechsler of $50,110.00 for his stock in Athos Steel and $44,000.00 for his stock in Athos Realty. Thus Athos Steel was obligated to the sellers as follows:

|  | Augustus M. Ash | Lawrence R. Wechsler |
| --- | --- | --- |
| Stock of Athos Steel | $178,568.00 | $249,000.00 |
| Stock of Athos Realty | 90,000.00 | 158,000.00 |
| Total | $268,568.00 | $407,000.00 |

33. These amounts were to be paid out in accordance with schedules of monthly and annual payments, allowing for payment at 9% interest, and lasting until October 1, 1991 for L. Wechsler and April 1, 1992 for Ash.

34. The obligations were secured by a pledge of the stock being sold, the stock to be held in escrow until payment was completed.

35. Athos Steel suffered no immediate economic detriment as a result of the obligations it incurred in the November 29, 1984 transaction. In effect, the agreement substituted payments on the indebtedness for the purchase of the stock in lieu of payments that were being made to Ash and L. Wechsler in the form of salary and expenses.

36. No evidence was presented to suggest any causal link between the transaction and Athos Steel's subsequent decision to seek relief under chapter 11.

37. Although before the restructuring of the transaction some checks were drawn on Athos Realty as a deposit on the expected redemption of its corporate stock, the funds had been supplied by Athos Steel. There is no evidence that Athos Realty was left with a debt after the arrangements were finalized or was in any other way affected adversely by this procedure.

38. As a result of the November 28, 1984 transaction, the ownership of Athos Steel and Athos Realty was as follows:

Shares – %

| | |
| --- | --- |
| Lawrence R. Wechsler | – |
| Augustus M. Ash | – |
| David Wechsler | 9,023 – 98.75% |

| | Shares – % | |
|---|---|---|
| Barbara Stanger | 57 – | .62% |
| Robert C. Dunn | 57 – | .62% |
| Total Outstanding | 9,137 – | 100% |

| | After Share – % | |
|---|---|---|
| Lawrence R. Wechsler | – | |
| Augustus M. Ash | – | |
| David Wechsler | 9 – | 4.5% |
| Robert Wechsler | 2 – | 1.0% |
| Susan Stanger | 2 – | 1.0% |
| Deborah Stanger | 2 – | 1.0% |
| Tobie Stanger | 1 – | 0.5% |
| Leo Stanger | 1 – | 0.5% |
| Athos Steel | 181 – | 90.5% |
| Total Outstanding | 200 – | 100% |

39. The transaction of November 29, 1984 was essentially unitary, although it involved two selling shareholders and the stock of two corporations. It was the parties' intent that the stock of neither shareholder would have been sold without the contemporaneous sale of the stock of the other.

40. The primary reason for the ultimate structure of the transaction was that it was not the intent of the parties to confer control of Athos Realty on the plaintiffs. A minor consideration was that Athos Realty had substantial assets in the nature of real estate and equipment, but had neither cash nor a line of credit, since it was not operating a business. Thus, the funds for the purchase would have to come from Athos Steel and it seemed more appropriate that the Athos Realty stock go to the entity which was paying for it.

41. The original by-laws of Athos Realty had provided for restrictions on the sale of shares, requiring that they be tendered to the other shareholders before being transferred to outsiders.

42. On June 26, 1967 and August 11, 1969 new by-laws were adopted by unanimous written consent of all shareholders, including Barbara Stanger and Jay Wechsler, which contained no restriction on the sale of shares.

43. There is no evidence of a shareholder agreement with respect to restriction other than the original, repealed by-laws.

44. There was no evidence that the price paid to Ash and L. Wechsler for their stock in either corporation exceeded the fair market value of the stock.

45. Prior to November 29, 1984, the plaintiffs were offered an opportunity to sell their shares to Athos Steel at the same price received by Ash. They rejected this offer.

46. The transaction of November 29, 1984 was not shown to be detrimental to the minority shareholders of either Athos Steel or Athos Realty.

## V. CONCLUSIONS OF LAW

1. Plaintiffs Barbara Stanger and Robert C. Dunn are entitled to bring this action derivatively on behalf of Athos Steel.

2. Plaintiffs Leo Stanger, Barbara Stanger, Deborah Stanger, Susan Stanger and Tobie Stanger are entitled to bring this action derivatively on behalf of Athos Realty.

3. The plaintiffs' claims under count VI are noncore, related proceedings.

4. The plaintiffs' claims against Athos Steel under count V are core proceedings.

5. The plaintiffs' claims under count V against D. Wechsler and Morehouse are noncore, related proceedings.

6. The bankruptcy court may issue a judgment with respect to plaintiffs' claims against Athos Steel under count V and must submit proposed findings of fact and conclusions of law to the district court with respect to all other claims in this case.

7. Under count IV, the November 29, 1984 transaction is subject to scrutiny under the "intrinsic fairness" test rather than the "business judgment" rule.

8. The transaction of November 29, 1984 was intrinsically fair to Athos Steel and its minority shareholders.

9. The directors of Athos Steel had a valid corporate purpose in entering the transaction of November 29, 1984 for the purchase of the Athos Realty stock.

10. The directors of Athos Realty did not breach their fiduciary obligation in their participation in the sale by Ash and L.

Wechsler of their Athos Realty stock to Athos Steel.

11. The sale to Athos Steel of the controlling stock of Athos Realty by Ash and L. Wechsler was not harmful or wrongful as to Athos Realty or its minority shareholders.

12. The sale to Athos Steel of the controlling stock of Athos Realty by Ash and L. Wechsler did not violate the contractual rights of the minority shareholders of Athos Realty.

13. Athos Realty did not enter a binding, enforceable contract with Ash and L. Wechsler in March 1984 for the redemption of their majority stock in Athos Realty.[15]

## VI. DISCUSSION

Plaintiffs assert in this case that D. Wechsler and Morehouse breached their fiduciary obligations as officers of Athos Steel and Athos Realty by entering into the November 29, 1984 stock purchase transactions with Ash and L. Wechsler, the controlling shareholders of the two corporations. The legal principles governing such a claim are well established.

■■■ In Pennsylvania, officers and directors of a corporation stand in a fiduciary relation to the corporation. 15 P.S. § 1408: *Enterra Corp. v. SGS Associates,* 600 F.Supp. 678, 684 (E.D.Pa.1985). The fiduciary obligation includes both a duty of care and a duty of loyalty. *Enterra Corp. v. SGS Associates: accord, Norlin Corp. v. Rooney, Pace, Inc.,* 744 F.2d 255, 264 (2d Cir.1984). The duty of care obligates a director to discharge his duties to the corporation with the same diligence, care and skill which ordinarily prudent persons exercise in their personal affairs; failure to exercise such care renders an officer liable for resulting corporate losses. *See Wolf v. Fried,* 473 Pa. 26, 373 A.2d 734 (1977); *Bellis v. Thal,* 373 F.Supp. 120, 123 (E.D. Pa.1974), *aff'd,* 510 F.2d 969 (3d Cir.1975). The duty of loyalty requires that corporate officers

devote themselves to the corporate affairs with a view to promote the common interests and not their own, and they cannot directly or indirectly, utilize their position to obtain any personal profit or advantage other than that enjoyed also by their fellow shareholders.

*Hill v. Hill,* 279 Pa.Super. 154, 160, 420 A.2d 1078, 1081 (1980), *quoting Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 151, 53 A.2d 143, 147 (1947); *accord, Enterra Corp. v. SGS Associates,* 600 F.Supp. at 684.

■■■ Similarly, a majority shareholder, or group of shareholders who combine to form a majority, has a fiduciary duty to the corporation and to the minority shareholders if the majority dominates the board of directors and controls the corporation. *Matter of Reading Co.,* 711 F.2d 509, 517 (3d Cir.1983); *Provident National Bank v. United States,* 436 F.Supp. 587 (E.D.Pa. 1977); *Ferber v. American Lamp Corp.,* 503 Pa. 489, 469 A.2d 1046 (1983); *Carr v. Carr O'Brien Co.,* 386 Pa. 196, 125 A.2d 607 (1956). "Adherence by the majority interest to [its] fiduciary duty ... is particularly critical in the context of a closely-held corporation." *Orchard v. Covelli,* 590 F.Supp. 1548, 1557 (W.D.Pa.1984), *defendant's appeal dismissed,* 791 F.2d 916, 920 (3d Cir.), *judgment aff'd on plaintiff's appeal,* 802 F.2d 448 (3d Cir.1986); *accord, Donahue v. Rodd Electrotype Co. of New England, Inc.,* 367 Mass. 578, 328 N.E.2d 505 (1975).

■■■ In recognition of the principle that it is the directors and not the shareholders who must manage the corporation, the courts have developed the business judgment rule to protect directors from unwarranted interference from complaining shareholders. Under the business judgment rule, a court will not interfere with the judgment of the board of directors absent a showing of fraud or gross abuse of discretion. *Burton v. Exxon Corp.,* 583 F.Supp. 405, 415 (S.D.N.Y.1984); *Enterra Corp. v. SGS Associates,* 600 F.Supp. at

---

**15.** The foregoing findings of fact and conclusions of law shall be treated as proposed findings and conclusions with respect to the plaintiffs' claims under count IV and the plaintiffs' claims against D. Wechsler and Morehouse under count V.

685. Put another way, courts will not disturb the judgment of a board of directors if it can be attributed to any rational business purpose. *Matter of Reading Co.,* 711 F.2d at 517. Where, however, there is a prima facie showing that the directors or majority shareholders have a self-interest in a particular corporate transaction, the business judgment rule does not apply and the burden shifts to the directors to demonstrate that the transaction is intrinsically fair. *See Norlin Corp. v. Rodney, Pace, Inc.,* 744 F.2d at 264; *Orchard v. Covelli,* 590 F.Supp. at 1556. As one court has stated:

> when the stockholders or directors, who control the making of a transaction and its terms, are on both sides, then the presumption and deference to sound business judgment are no longer present.... Intrinsic fairness is then the criterion.

*Burton v. Exxon Corp.,* 583 F.Supp. at 415.[16]

I will now apply the foregoing principles to plaintiffs' claims under counts IV and V of the complaint.

## A. Count IV

■ The minority shareholders of Athos Steel assert that the November 29, 1984 transaction should be reviewed under the intrinsic fairness test rather than the business judgment rule. I agree. The transaction was between the majority shareholders of the corporation and the corporation itself. In the transaction, the Athos Steel redeemed its own stock from its majority shareholders and also purchased the majority shareholders' holdings in another corporation, Athos Realty. Furthermore, as a result of the transaction, D. Wechsler, a director and minority shareholder of both corporations became the majority shareholder of both corporations.[17] The interest of both D. Wechsler as well as Ash and L. Wechsler in this transaction is obvious.[18]

■ I also conclude, however, that the transaction was intrinsically fair as to the Athos Steel minority shareholders. Nothing in the evidence indicated that the purchase price of the Athos Realty stock was unduly high, thus granting Ash and L. Wechsler a windfall profit. If anything, the evidence suggested that the price was low [19] and that Athos Steel received a bargain by becoming the controlling stockholder in a valuable company. In this respect, the minority shareholders and the corporation benefited from the transaction. *See Robinson v. Brier,* 412 Pa. 255, 194 A.2d 204 (1963) (evidence supported finding that sales transaction between director and corporation was fair and benefited the corporation even though the director made a profit). *Cf. Bellis v. Thal,* 373 F.Supp. at 126 (directors liable in transaction in which debtor paid $320,000.00 for accounts receiv-

**16.** Sometimes this principle has been stated slightly differently, *i.e.,* that the burden shifts when there is evidence of "self-dealing." Self-dealing occurs when the majority shareholder (or parent corporation) causes the dominated corporation to act in such a way that the majority receives a benefit from the corporation to the exclusion or detriment of the minority shareholders. *Matter of Reading Co.,* 711 F.2d at 518; *Burton v. Exxon Corp.,* 583 F.Supp. at 415.

**17.** It is less clear whether the minority shareholders of Athos Steel were "excluded" from the benefits of the transaction. On the one hand, they were granted the same opportunity as Ash and L. Wechsler to redeem their stock and at the same price. *See generally O'Neal's Oppression of Minority Share holders* § 4:01–02 (2d ed. 1985) ("O'Neal"); Berle, *"Control" in Corporate Law,* 58 Colum.L.Rev. 1212 (1958). On the oth-

er hand, they were not given the opportunity to purchase any of the stock owned by Ash and L. Wechsler that Athos Steel redeemed or any of the Athos Realty stock. Since I find, in any event, that the business judgment rule is inapplicable, I need not resolve this issue.

**18.** The plaintiffs' request for closer scrutiny of the transaction is reinforced by the fact that the parties to the transaction were represented by attorneys who were all members of the same law firm. This was hardly a typical, arms-length negotiation. I do not pass, however, on plaintiffs' assertion that Morehouse's conduct violated the disciplinary rules of the Code of Professional Responsibility.

**19.** Indeed, plaintiff Barbara Stanger herself testified that she thought that the price paid for the Athos Realty stock was too low.

able worth $45,000.00 to second corporation controlled by the directors).[20]

The real crux of Athos Steel minority shareholders' objection is their assertion that the transaction was designed primarily to give D. Wechsler control of Athos Realty. However, I conclude that the intent to control Athos Realty, by itself, was not improper as to the Athos Steel minority shareholders.

As the defendants point out, court review of transactions which determine corporate control usually arise in the context of a management's response to a take-over effort. In that context, the Third Circuit has held that where a showing is made that the corporate directors entered a transaction solely or primarily to retain control of their own corporation, the burden shifts to them to show that the transaction in question had a valid corporate purpose. *Johnson v. Trueblood*, 629 F.2d 287 (3d Cir. 1980), *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). This case, by comparison, involves Athos Steel seeking control over another corporation. Nevertheless, since the majority shareholders of the selling corporation also controlled Athos Steel, the burden has shifted to the defendants to demonstrate a valid corporate purpose to the transaction.

The transaction clearly had a valid corporate purpose. Because Ash and L. Wechsler were the controlling shareholders of both corporations, Athos Realty had always functionally been controlled by Athos Steel. When they determined that they wished to sell their interest in Athos Realty, it made perfect business sense for Athos Steel to seek to purchase the stock. The transaction allowed Athos Steel to acquire a valuable asset and control of a company which leased property to the corporation which is critical to its operation. It also accomplished, in effect, the maintenance of the status quo. In the absence of a showing that there was overreaching in setting the terms of the sale or that the transaction harmed Athos Steel, the transaction was perfectly fair and proper as to the Athos Steel minority shareholders. *Cf. Enterra Corp. v. SGS Associates*, 600 F.Supp. at 687–90 (upholding a "standstill" agreement); *Reifsnyder v. Pittsburgh Outdoor Advertising Co.*, 396 Pa. 320, 152 A.2d 894 (1959) (in dictum, approving, over objection of minority shareholders, redemption of shares from majority shareholder funded by a loan to the corporation for purpose of continuing the present management).

### B. *Count V*

Evaluation of count V is made difficult by its lack of clarity and the fact that Athos Realty, as a corporate entity, was not a participant in the November 29, 1984 transaction. Nevertheless, plaintiffs appear to advance three legal theories in support of their claim.[21] I find them all to be without merit.

First, I understand the plaintiffs to charge that D. Wechsler, Morehouse and

---

**20.** Neither count IV of the complaint nor plaintiffs' post-trial submissions challenges the propriety of the redemption of the Athos Steel shares. *See, e.g.,* Plaintiffs Memorandum of Law 16 (asserting that evidence established that D. Wechsler "engaged in a pattern of self dealing ... the result of which was to place control and ownership of *[Athos] Realty* through the use of [Athos] Steel's and [Athos] Realty's funds....") (emphasis added). I note that there was no evidence that the price paid for the redeemed shares was excessive. *See generally* O'Neal § 3.16 (discussing cases involving issue whether minority shareholder has right to redeem shares on same terms as majority shareholder). Other significant aspects of the redemption were that payments for the redeemed stock were deferred and the only security taken by Ash and L. Wechsler was a security interest in the stock itself. Thus, the effectuation of the agreement was dependent on future profits of the company; if the payments were not made, Ash and L. Wechsler would essentially have the power to return to the status quo ante. These are further indicia of the basic fairness of the transaction.

**21.** A fourth theory, that the sale of the Athos Realty stock to Athos Steel without first offering it to the Athos Realty shareholders violated their contract rights, appears to have been abandoned as the plaintiffs make no reference to this theory in their post-trial submissions. Nevertheless, it was pleaded in count V and there was evidence presented on the issue at trial. Therefore, I have made findings of fact and issued conclusions of law adverse to plaintiffs on the issue.

Athos Steel, acting in concert with the Athos Realty majority shareholders (Ash and L. Wechsler, whom the plaintiffs chose not to sue), entered an agreement for the sale of the controlling stock of Athos Realty which was wrongful as to Athos Realty and its minority shareholders. Such a transaction might be wrongful if the selling shareholder appropriated a premium in price for the sale of the "control." Alternatively, the selling shareholders might be liable if they negligently turn control of the company over to an irresponsible purchaser who proceeds to "loot" the corporate assets. *See O'Neal's Oppression of Minority Shareholders* §§ 4:01–4:05 (2d ed. 1985).

The evidence in the case does not support the plaintiffs' theory. Athos Steel paid no premium for the Athos Realty stock; if anything, the price was low. Nor were the Athos Realty minority shareholders deprived of the opportunity to sell their holdings on equivalent terms: they were offered the right to sell their stock at the same price as Ash. At bottom, the Athos Realty minority shareholders were unaffected by the transaction. Prior to November 29, 1984, Athos Realty was dominated by two shareholders who also controlled Athos Steel. There is no evidence that the substitution of Athos Steel as the controlling shareholder, instead of Ash and L. Wechsler, by itself, had an adverse impact on the corporation.

Second, the plaintiffs assert that D. Wechsler and Morehouse breached their fiduciary duties to Athos Realty insofar as they permitted Athos Realty funds to be used to assist Athos Steel in purchasing the Athos Realty stock owned by Ash and L. Wechsler. However, I have resolved the conflicting evidence against the plaintiffs and concluded that the funds at question were generated by Athos Steel and simply passed through the Athos Realty account.[22]

Thus, Athos Realty suffered no diminution of assets in connection with the transaction and therefore, this legal theory fails.

Finally, the plaintiffs assert that the negotiations prior to November 1984 culminated in an enforceable contract for the redemption by Athos Realty of its shares held by Ash and L. Wechsler and that Athos Realty is entitled to specific performance of that contract. The defendants counter by arguing that the evidence establishes that no final agreement was reached in March 1984.[23] I agree with the defendants. The evidence establishes that, at no point prior to November 1984, did L. Wechsler unequivocally accept the offers made for his shares in Athos Realty and Athos Steel and that the intent of the parties was that there would be no contract until both Ash and L. Wechsler reached an agreement to sell their holdings. To create a contract, an acceptance must be unequivocal. *See, e.g., Matter of ABC–Federal Oil and Burner Co.*, 182 F.Supp. 928, 934 (E.D.Pa.1960), *aff'd*, 290 F.2d 886 (3d Cir. 1961). In addition, the subsequent conduct of all the parties is completely consistent with a finding that they had not, as of March 1984, reached a final meeting of the minds as to all of the essential terms of the agreement. *See* Finding of Fact No. 28.

## VII. CONCLUSION

In essence, the plaintiffs have sought, through this lawsuit, to compel the result which Ash and L. Wechsler would not assent to—plaintiffs' control of Athos Realty. They request that I undo a stock transfer, but not in a way which would restore the parties to their respective rights; rather, they wish to force a sale of Athos Realty to themselves on the same terms on which Athos Steel purchased the stock. And, they seek this relief without naming Ash and L. Wechsler as parties. The plaintiffs

**22.** Defendants did not present documentary evidence to establish this fact, which would have been preferable. Nevertheless, in light of the nature of the business conducted by the two corporations, their history and close relationship, I find credible defendants' explanation of the source of the funds drawn on the Athos Realty bank account.

**23.** The defendants also argue that this claim was eliminated from this case when count VI was withdrawn by the plaintiffs and suggest that the court decline to consider the claim because it is "outside the frame of reference in which defendants offered their defensive evidence." (Defendants Reply Brief 1–2). I do not reach this issue.

**544**

have cited no authority for the proposition which seems to be the foundation of their case—that even in the absence of a contractual duty, a showing of negligence or harm to the corporation, the majority shareholders of Athos Realty were obliged to offer their stock to all of the Athos Realty shareholders, pro rata. Based on the evidence presented before me, I cannot agree that Pennsylvania law requires the relief they seek.

Therefore, I will:

1. recommend that the district court enter judgment in favor of defendants and against plaintiffs on count IV;

2. enter judgment in favor of Athos Steel and against the plaintiffs on count V; and

3. recommend that the district court enter judgment in favor of defendants D. Wechsler and Morehouse and against the plaintiffs on count V.

An order consistent with this opinion will be entered.