**In re EARLE INDUSTRIES, INC., Debtor.**

**EARL INDUSTRIES, INC., Plaintiff,**

**v.**

**BOND GENERAL CONTRACTING, INC. and Reliance Insurance Co., Defendants.**

**Bankruptcy No. 86–00869G.
Adv. No. 86–0392G.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 30, 1987.

See also 67 B.R. 822.

Peter D. Bludman, Hepburn, Willcox, Hamilton & Putnam, Philadelphia, Pa., for debtor/plaintiff, Earle Industries, Inc.

Charles C. Coyne, Philadelphia, Pa., for defendants, Bond General Contracting, Inc. and Reliance Ins. Co.

Edward S.G. Dennis, Jr., U.S. Atty., Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa., intervenor.

OPINION

BRUCE FOX, Bankruptcy Judge:

Before me is a motion filed pursuant to Bankr. Rule 9023 requesting that I reconsider an order of this court denying defendants' motion to dismiss. For the reasons set forth below, I will grant in part and deny in part defendants' motion for reconsideration.

I.

For purposes of deciding this motion, plaintiff's allegations set forth in its second amended complaint are accepted as true. *See, e.g., In re Stephen W. Grosse, P.C.*, 68 B.R. 847, 848 (Bankr.E.D.Pa.1987); *In re Ritter*, 46 B.R. 183, 184 n. 1 (Bankr.E.D.Pa. 1985).

Plaintiff, Earle Industries, Inc., filed a voluntary petition under chapter 11 of the Bankruptcy Code on February 27, 1986, and is a debtor in possession. Prior to the filing of the petition, plaintiff manufactured certain equipment for use in the El Casino Real Bridge construction project located in Palm Beach County, Florida. Defendant, Bond General Contracting, Inc. was general contractor on this project, and defendant, Reliance Insurance, Inc., was the bonding company on the project. Plaintiff initiated this adversary proceeding to collect the pre-petition obligations of defendants on account of the El Casino Real Bridge project.

Defendants' motion to dismiss raises two distinct issues. First, defendants request a determination that this proceeding is a non-

core proceeding under 28 U.S.C. § 157(c)(1). Although this is not grounds for dismissal, 28 U.S.C. § 157(b)(3) does allow a party on motion to request a determination "whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under Title 11." I will treat defendants' motion as such a request.

Second, defendants argue that this proceeding must be dismissed because 28 U.S.C. § 157 is an "over-broad grant of jurisdiction to a court not properly constituted under Article III of the constitution." (Defendants' Motion at 8(b)).[1] In sum, defendants' contend that if this proceeding is a related proceeding under § 157(c)(1), bankruptcy courts cannot be granted any authority to hear it.[2]

By order entered September 18, 1986, this court denied defendants' motion without mentioning the core/noncore issue. However, it appears from the court's oral reference at argument to *In re Franklin Computer Corp.*, 50 B.R. 620 (Bankr.E.D. Pa.1985), that the court believed this proceeding was a core matter. It is this order that defendants ask me to reconsider. Since the constitutional issue is dependent upon my determination under § 157(b)(3), I will address the core/noncore issue first.[3]

## II.

In the matter *sub judice*, the plaintiff/debtor seeks to recover damages arising from defendants' alleged prepetition breach of contract. Since the contract was entered into in the ordinary course of the debtor's business, it may be characterized as an accounts receivable. Defendants seek a classification of this proceeding as noncore rather than core, a dichotomy established by 28 U.S.C. §§ 157, 1334 in response to the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) *("Marathon")*. Under 28 U.S.C. § 157, core proceedings are those in which bankruptcy courts may fully adjudicate the rights of the litigants; in noncore or related proceedings, bankruptcy courts are limited to serving as adjuncts to the district courts. *See In re Athos Steel and Aluminum, Inc.*, 71 B.R. 525, 532 (Bankr.E.D.Pa.1987); Carlson, *Distinguishing Core From Noncore Proceedings*, Norton Bankr. Law Advisor (No. 1) (January 1985).

■ Neither *Marathon* nor section 157 attempts to define noncore proceedings. Section 157(b)(2) does provide some examples of core proceedings, without being inclusive, but some of these examples are more clear than others.[4] As a result of this statutory ambiguity, courts have divided in their classification of accounts receivable claims. Some have held that such

**1.** Because defendants have drawn into question the constitutionality of an Act of Congress affecting the public interest, an order was issued on March 17, 1987, pursuant to 28 U.S.C. § 2403, granting the United States leave to intervene in this proceeding.

**2.** Defendants also mention that § 157 is "unconstitutionally vague" and devote but three paragraphs of their thirty two page memoranda to addressing this issue. To the extent they are arguing that § 157 makes it difficult for litigants to know whether a particular proceeding is core or noncore, such ambiguity is hardly unique to this statute and does not rise to constitutional dimensions. Moreover, § 157(b)(3) allows parties to seek a court determination to resolve any uncertainty in a particular case—as the defendants have done here.

**3.** Both issues raised by defendants have been widely discussed by bankruptcy judges, Article III judges, and commentators, thus enabling me to treat these somewhat complex issues in a more cursory fashion than they would other require.

**4.** Section 157(b)(1)(O), which is among those that are less clear, states, for example, that a core proceeding includes:

other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor—creditor or equity security holder relationship....

This is borrowed from the plurality's statement in *Marathon.*

"But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a 'public right,' but the latter obviously is not." 458 U.S. at 71, 102 S.Ct. at 2871.

claims constitute core proceedings. *See, e.g., In re Allegheny, Inc.,* 68 B.R. 183 (Bankr.W.D.Pa.1986); *In re Windsor Communications Group,* 67 B.R. 692 (Bankr.E. D.Pa.1986); *In re Bucyrus Grain Co.,* 56 B.R. 204 (Bankr.D.Kan.1986); *In re Franklin Computer Corp.; Matter of Baldwin United Corp.,* 48 B.R. 49 (Bankr.S.D.Ohio 1985). Others have held that such claims are noncore matters. *See, e.g., Matter of George Woloch Co., Inc.,* 49 B.R. 68 (E.D. Pa.1985); *Mohawk Industries v. Robinson Industries,* 46 B.R. 464 (D.Mass.1985); *Matter of Century Brass Products, Inc.,* 58 B.R. 838 (Bankr.D.Conn.1986); *In re U.S. Bedding Co.,* 52 B.R. 875 (Bankr.C.D. Cal.1985). Given my understanding of the holding in *Marathon,* I believe that accounts receivable claims are noncore claims, thus limiting my ability to grant the debtor the relief it seeks.

In *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985), Justice O'Connor speaking for the majority of the court stated:

> "The Court's holding in [*Marathon*] establishes ... that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review."

This assessment was later echoed in *Commodity Future Trading Commission v. Schor,* — U.S. —, 106 S.Ct. 3245, 3259, 92 L.Ed.2d 675 (1986), where Justice O'Connor, again speaking for the majority, stated:

> The risk that Congress may have improperly encroached on the federal judiciary is ... magnified when Congress "withdraw[s] from judicial cognizance any matter which, from its nature is the subject of a suit at the common law, or in equity, or admiralty" and which therefore has traditionally been tried in Article III courts, and allocates the decision

of those matters to a non-Article III forum of its own creation.

■ At issue here is a breach of contract action brought by the debtor against entities which have not participated in this bankruptcy case other than as defendants in this proceeding. In the absence of the bankruptcy filing, this identical lawsuit could have been brought by the debtor against defendants on the same claim for the same relief. *See In re Kaiser* 722 F.2d 1574, 1582 (2d Cir.1983) (holding that a noncore proceeding exists where the debtor's bankruptcy filing has "no bearing whatever on the issues involved or the outcome of the case"). The holding of *Marathon* compels that I classify this matter as a noncore proceeding. *Mohawk Industries v. Robinson Industries; In re Athos Steel and Aluminum, Inc.,* 71 B.R. at 534;[5] *accord,* 1 *Collier on Bankruptcy,* § 3.01, at 3–37 to 38, 3–42 (15th ed. 1986) ("Collier"); Greenfield, *The National Conference's Position on the Court System Under the Bankruptcy Amendment and Federal Judgeship Act of 1984, and Suggestions for Rule Promulgation,* 23 Harv.J. on Legis. 357, 365 (1986).

■ Those courts that have reached a different conclusion often do so by giving weight to practical considerations such as ease and prompt administration of the debtor's estate or judicial economy. To some extent, these practical concerns are overstated for most accounts receivable matters are not litigated and therefore, treating these matters as related proceedings often means only that the litigants settle and so consent to a final adjudication in bankruptcy court, *see* 28 U.S.C. § 157(c)(2), or that the district court enters judgment by default. Moreover, while judicial economy may serve as a basis for a federal court's exercise of its discretion to retain jurisdiction over a matter, *see In re Stardust Inn, Inc.,* 70 B.R. 888, 891 (Bankr.

---

**5.** This damage claim for breach of contract does not constitute a turnover complaint within the meaning of 28 U.S.C. § 157(b)(2)(E) or 11 U.S.C. § 542(b). *Matter of Century Brass Prod-* *ucts, Inc.,* 58 B.R. at 840–843; *accord; In re Windsor Communications Group. Contra In re Allegheny, Inc.,* 65 B.R. at 190.

E.D.Pa.1987), it does not empower a court to obtain subject matter jurisdiction. *See Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).

More important, though, is that those courts which give an expansive reading to section 157(b)(2), in order to avoid the delays inherent in section 157(c)(1), often overlook the underlying premise of *Marathon*—which is the recognition of the constitutional design of the separation of powers implicit in Article III. One purpose of Article III is to insure fairness to all litigants by assuring the impartiality of the federal judiciary. *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537, 541 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). Occasionally, the constitutional emphasis on fairness, found not just in Article III but in other provisions such as the Fifth Amendment's Due Process clause, will yield a slower judicial process than a judicial system that did not possess these concerns. *See Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *Compare North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (prejudgment attachment procedures designed to protect a secured creditor's interest in preventing concealment or waste of liened property does not satisfy due process in absence of prior notice and hearing or other procedures designed to minimize arbitrary deprivation of property) *with Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Thus, to the extent that *Marathon* mandates that district courts enter judgments in accounts receivable actions, (absent the consent of all parties), this result simply seeks to insure that judicial fairness is paramount over efficiency. *Accord, Acolyte Electric Corp. v. City of New York,* 69 B.R. 155 (Bankr.E.D.N.Y.1986).

### III.

Defendants argue that it is constitutionally impermissible for an Article I judge to hear a related proceeding, even in the limited fashion permitted by 28 U.S.C. § 157(c)(1).[6] Defendants reach this conclusion by interpreting *Marathon* as mandating that all matters related to bankruptcy cases be initially heard by an Article III judge.[7] In so doing, defendants misread the plurality opinion in *Marathon* and ignore the underpinnings of section 157(c)(1).

As noted in Part II above, *Marathon* invalidated the broad jurisdictional grant to bankruptcy courts provided by former 28 U.S.C. § 1471(c) as it applied to noncore proceedings. The court based its decision upon two discrete principles: that noncore matters were not within those "public rights" which Congress might assign to Article I judges; and, that bankruptcy courts were not true adjuncts of the district courts under the structure established by the Bankruptcy Reform Act of 1978. Noncore matters are solely within the province (within the federal judiciary) of Article III tribunals and, therefore, the power provided to bankruptcy courts in 1978 to decide these proceedings was too broad. *See Wharton-Thomas v. United States,* 721 F.2d 922 (3d Cir.1983); *In re Athos Steel and Aluminum, Inc.,* 71 B.R. at 533–35; *Ram Construction Co. v. Port Authority of Allegheny County,* 49 B.R. 363, 365 (W.D.Pa.1985).

After *Marathon* invalidated former 28 U.S.C. § 1471(c), district courts became the only federal courts with jurisdiction over bankruptcy cases. *See In re Kaiser; Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). A temporary measure

---

**6.** The only issue before me is the constitutionality of § 157(c)(1). Therefore, I do not address the constitutionality of §§ 157(b)(1), an issue recently discussed in great detail in *In re L.T. Ruth Coal Co.,* 66 B.R. 753 (Bankr.E.D.Kentucky 1986) (dictum). *But see In re Tom Carter Enterprises, Inc.,* 44 B.R. 605, 609 (C.D.Cal.1984).

**7.** Although the Supreme Court invalidated 28 U.S.C. § 1471, this broad jurisdictional grant for district courts was reinstated in 28 U.S.C. § 1334(b). *See Ram Construction Co. v. Port Authority of Allegheny County,* 49 B.R. 363, 365 (W.D.Pa.1985). Defendants do not challenge the jurisdiction of district courts to decide noncore bankruptcy proceedings.

was adopted in all district courts to maintain some bankruptcy court system. The measure adopted was the "Emergency Rule" proposed by the Judicial Conference of the United States. 1 Collier ¶ 3.01, at 3–15. Among other matters, this Emergency Rule: referred bankruptcy cases from district court to bankruptcy judges (¶ (c)(1)); allowed the district court to withdraw the reference at any time (¶ (c)(2)); divided adversary proceedings into related and unrelated [core] proceedings (¶ (d)(3)(A)); and, limited bankruptcy judges to submitting proposed findings and conclusions and a recommended judgment to the district court in related proceedings, (¶ (d)(3)(B)). 1 Collier ¶ 3.01, at 3–15 to 3–19 (text of rule); *accord, In re Lafayette Radio Electronics Corp.,* 761 F.2d 84, 90 (2d Cir.1985).

This temporary measure was soon challenged on constitutional grounds similar to those raised in *Marathon.* However, these challenges were rejected by every Court of Appeals to consider the matter. *E.g., In re Hansen,* 702 F.2d 728, (8th Cir.), *cert. denied,* 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983); *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, (6th Cir. 1983); *In re Braniff Airways, Inc.,* 700 F.2d 214, (5th Cir.), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983); *Coastal Steel v. Tilghman Wheelabrator, Ltd.; In re Kaiser.* Insofar as a challenge was made specifically to the propriety of bankruptcy judges hearing related proceedings, the Second Circuit noted:

> We conclude that the Emergency Rule's grant to bankruptcy court of such limited powers in cases "related to" bankruptcy proceedings leaves with the district court the ultimate power of adjudication and hence does not violate Article III.

*In re Lafayette Radio Electronics Corp.,* 761 F.2d at 91 (citation omitted).

The provisions of the Emergency Rule concerning related proceedings had been based upon a careful reading of *Marathon* as well as prior Supreme Court decisions in interpreting Article III. Of particular relevance was *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). That matter involved an Article III challenge to a provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), which permitted district courts to refer certain "dispositive" motions in criminal matters to magistrates who would then hear the motions and make recommendations as to their disposition. By statute, the district court was to make a "de novo determination" of those portions of the recommendation to which an objection was filed.

In rejecting the challenge to the propriety of section 636(b)(1), the court in *Raddatz* held that Article III was not violated by the district court's delegation of limited authority to a magistrate because "the ultimate decision is made by the district court." 447 U.S. at 683, 100 S.Ct. at 2416; *accord, Wharton-Thomas v. United States,* 721 F.2d at 928. Not surprisingly, the provisions of the Emergency Rule dealing with related proceedings were upheld because the rule utilized a similar delegation scheme.

In 1984, The Bankruptcy Amendments and Federal Judgeship Act of 1984 was enacted, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"), which in 28 U.S.C. § 157(c)(1) built upon the jurisdictional structure established by the Emergency Rule and sanctified in *Raddatz. See In re Production Steel Inc.,* 48 B.R. 841, 844 (M.D.Tenn.1985); *In re Tom Carter Enterprises, Inc.,* 44 B.R. 605 (C.D.Cal.1984). *See also* Carlson, *Are The Jurisdictional Provisions of the Bankruptcy Amendments of 1984 Constitutional?,* Norton Bankr. Law Advisor (No. 9) 1 (September 1984). After BAFJA, bankruptcy courts are limited to making recommendations in related proceedings, and "de novo review" is required by the district court of any proposed finding to which objection is taken, 28 U.S.C. § 157(c)(1); all judgments in related proceedings are entered only by the district court, *id;* and, the district court may refer related proceedings to bankruptcy judges and may withdraw the references from bankruptcy court for cause, 28 U.S.C. § 157(a), (d). *See generally In re Bertoli,* 812 F.2d 136, 139 (3d Cir.1987). Furthermore, bankruptcy judges are now appointed by those Article III judges constituting

the Circuit Court of Appeals and may be removed by the judges of the Circuit Judicial Council. 28 U.S.C. § 152(c).

▮ Thus, BAFJA, and section 157(c)(1) in particular, invests the Article III judicial branch with extensive control over bankruptcy courts and their handling of related proceedings. This includes the retention by district court of the ultimate responsibility for entering judgment in related proceedings and the power to determine whether the bankruptcy court should even offer proposed findings and conclusions in noncore matters. These changes in bankruptcy court powers meet the concerns raised by *Marathon* and make the bankruptcy courts true adjuncts of the district court in related proceedings. *In re Tom Carter Enterprises Inc. See Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix.* I therefore conclude, as does virtually every court to consider the issue, that section 157(c)(1) is constitutional. *See, e.g., In re Production Steel Inc.; In re Tom Carter Enterprises, Inc.; In re WWG Industries,* 44 B.R. 287 (N.D.Ga. 1984); *In re Chase & Sanborn Corp.,* 51 B.R. 733 (Bankr.S.D.Fla.1985); *In re Lathrop,* 49 B.R. 885 (Bankr.N.D.Ill.1985); *In re Excelite Corp.,* 49 B.R. 923 (Bankr.N.D. Ga.1985) (dictum). *But cf. Matter of Associated Grocers of Nebraska Co-op, Inc.,* 46 B.R. 173 (Bankr.D.Neb.1985) (§ 157(b)(2)(F) is unconstitutional).

### IV.

Based on the foregoing, I conclude, pursuant to 28 U.S.C. § 157(b)(3), that this adversary proceeding is a noncore matter. I further hold that 28 U.S.C. § 157(c)(1) is constitutional. An order consistent with this opinion will be entered.