In re A.I.A. INDUSTRIES,
INC., Debtor.

Harry P. BEGIER, Jr.,
Trustee, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED
STATES, Defendant.

Harry P. BEGIER, Jr.,
Trustee, Plaintiff,

v.

EQUITABLE VARIABLE LIFE
INSURANCE CO.

Bankruptcy No. 84–02411K.
Adv. Nos. 86–0113K, 86–0114K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Aug. 13, 1987.

See also, Bkrtcy., 74 B.R. 691.

Daniel J. Zucker, Philadelphia, Pa., for defendant.

Paul J. Winterhalter, David S. Fishbone, Philadelphia, Pa., for trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURAL HISTORY

We are herein considering several procedural issues which we asked the parties to address in reference to these two cases, which are, by agreement of the parties, to be tried with two other cases concerning closely-related entities. The issues revolve around whether these adversary proceedings are core or non-core in nature, and the ramifications thereof, and whether the Defendant in one of the cases should be allowed to add an additional Count to the Counterclaim set forth in its original Answer.

With some regret, we are forced to conclude that at least one of these matters, Adversary No. 86–0113K (hereinafter referred to as "No. 113"), must be classified as non-core, and that therefore we cannot finally determine this matter, but rather may only submit proposed findings of fact and conclusions of law to the district court in reference to it. Although this question is closer in the other matter, Adversary No. 86–0114K (hereinafter referred to as "No. 114"), since we have determined No. 113 to be non-core, we shall treat both matters as non-core proceedings.

Insofar as the Defendant in No. 113 purported to amend its Complaint to append an additional Count to its Counterclaim, and seek relief from the automatic stay to assert this new Counterclaim as a setoff, we shall rule against the said Defendant for a variety of reasons. We find that the added Count is in part duplicative of defenses already raised and lacking the mutuality necessary to be asserted as a setoff as to its remainder. We further reject the said Defendant's contention that we expressly permitted this filing and, due to its undue delay in raising this issue, we question

whether an amendment to add this claim could be permitted.

The particular adversarial proceedings in issue were filed on February 10, 1986, by HARRY P. BEGIER, JR., appointed as Trustee of the Debtor in the proceedings before us, A.I.A. INDUSTRIES, INC., and a related corporate entity, AMERICAN INTERNATIONAL AIRWAYS, INC. (hereinafter referred to as "the Airways"), on September 20, 1984, approximately two months after this Debtor filed its Chapter 11 case on July 25, 1984, and the Airways filed its case on July 19, 1984.

The more complex of the Complaints, neither of which have ever been amended, sets forth two Counts and was filed in No. 113 against EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES (hereinafter referred to as "the Society"). The first Count seeks recovery of a claim reserve alleged to be $112,207.00 as of April 1, 1984, and dividends allegedly due from November, 1983, through March, 1984, in connection with a group health insurance policy which the Debtor purchased from the Society for the benefit of certain employees. The second Count alleges an improper cancellation of the insurance policy by the Society and for an accounting of funds to be applied against medical claims of the covered employees filed against the Debtor in excess of $93,-000.00.

The Complaint in No. 114, naming EQUITABLE VARIABLE LIFE INSURANCE CO. (hereinafter referred to as "the Variable") as Defendant, seeks an accounting of, and recovery of, the cash surrender value of certain key-employee life insurance policies purchased by the Debtor from the Variable.

The Society answered the Complaint in Adversary No. 113 on April 3, 1986. In addition to denying liability on both Counts, the Society, without seeking relief from the automatic stay to do so, asserted a Counterclaim against the Debtor of $49,146.45 for premiums which were allegedly due and unpaid subsequent to March 1, 1984.

Meanwhile, the Trustee, in his capacity for the Airways, filed Complaints to recover alleged preferential payments made by it to the Society, at Adversary No. 86–0312K (hereinafter referred to as "No. 312"), on April 14, 1986, and to the Variable, at Adversary No. 86–1077K (hereinafter referred to as "No. 1077"), on September 18, 1986.

The Variable answered the Complaint in No. 1077 on November 20, 1986. However, no answer was filed in either No. 114 or No. 312. On March 21, 1986, judgment was entered in favor of the Debtor against the Variable in No. 312 by default, and, on June 2, 1986, a judgment was entered in favor of the Airways against the Society in No. 114 by default. Ultimately, these defaults were opened by agreement of the Trustee on October 22, 1986 (No. 312), and December 12, 1986 (No. 114), respectively.

In late January, we first became aware of certain of these matters, which had appeared on our lists several times and been continued by agreement without apparent progress towards their resolution. Therefore, on January 29, 1987, noting that day that continuances of hearings in No. 113 and No. 312 had been requested until March 19, 1987, we ordered that no further continuances beyond the latter date would be permitted. Nevertheless, in late February, 1987, counsel contacted us and, as an apparent trade-off for a further continuance, recommended that Nos. 114 and 1077 be tried with Nos. 113 and 312 on May 7, 1987. We agreed, but entered a Pre-trial Order setting the discovery deadlines at April 3, 1987, and requiring pre-trial exchanges of exhibits and trial memoranda on or before April 30, 1987. This Order was basically unchanged except for setting a hearing on Motions to compel discovery on April 28, 1987, in an Order of April 22, 1987.

On May 4, 1987, the parties presented us with a Stipulation requesting that the trial be continued until June 17, 1987, and that the parties "shall have until May 29, 1987, to complete and/or file any and all amended discovery and pleadings." We reluctantly approved same, largely because the parties had produced copies of the exhibits to be entered and we were reasonably as-

sured that progress was being made towards imminent trial or settlement of these matters.

Unfortunately, the undersigned became ill and was unable to conduct the trial on June 17, 1987. We were thus unaware that the parties had, after May 4, 1987, manufactured a new controversy. Without advising the Court, the Society, on May 6, 1987, filed an Amended Answer in No. 113, appending thereto a new Count I to its Counterclaim,[1] also without seeking relief from the automatic stay to do so. Count I alleged that the Debtor was liable to the Society for any claims of the allegedly covered employees because it had breached its contractual duties to the Society and its fiduciary duties to the employees in administration of the insurance contract.

On May 15, 1987, the Trustee moved to strike the Amended Answer. On June 16, 1987, the Society finally got around to moving for relief from the stay for permission to assert its Counterclaims. The Trustee's Motion to Strike came before us on July 1, 1987, quickly reminding us that all four cases in issue must be re-scheduled for trial. On that date, we learned for the first time that pre-trial Memoranda had not been filed in either of these cases (Nos. 113 and 114) and, for the first time, the Defendants expressed the view that these matters could not be determined by us because they were non-core proceedings.

After an extended colloquy with counsel on that date, we agreed to continue the trials of all four matters once again, until September 1, 1987. We ordered that pre-trial in Nos. 113 and 114 on or before August 21, 1987. Given this almost incredible pre-trial journey, we *will not continue these matters further*. However, in order to clear the procedural air, we ordered the parties to file Briefs addressing the following issues:

1. Are the actions at Adversary Nos. 86–0113K and 86–0114K core or non-core matters?

2. If they are non-core matters, are the parties willing to allow the Court to determine these matters?

3. If they are non-core and both parties are not willing to allow this Court to determine these matters, is the Court obliged to submit proposed findings of fact and conclusions of law to the district court rather than make a determination in these cases?

4. May the Defendant properly raise the issues presented in the Counterclaims in the Answer in Adversary No. 86–0113K as a setoff?

5. Should this Court grant relief to the Defendant from the automatic stay to litigate the Counterclaims in the Answer in Adversary No. 86–0113K?

6. Assuming *arguendo* that the answers to the question raised in paragraphs [4] and [5] *supra* are affirmative, are there any other reasons why the Answer should be stricken in part or an amendment thereto disallowed?

After the predictable variances from the original briefing schedule, we received all of the Briefs on July 29, 1987. We are now prepared to provide answers to these questions.

**B. THESE MATTERS MUST BE CLASSIFIED AS NON–CORE, BUT RELATED, PROCEEDINGS, AND DEALT WITH BY US.**

Until July 1, 1987, we never heard the Defendants ever utter a hint that they considered these matters to be non-core. However, in their Briefs on the procedural issues, they do their July 1, 1987, utterances one better, and contend that No. 113 is, at least in part, not even a related matter. Hence, after months of supposedly preparing for us to try these matters to finality, the Defendants submit that not only can we not decide either of them, but we lack the jurisdiction to so much as hear at least part of No. 113.

---

1. This new Count was pleaded as Count I, and the Counterclaim included in the original Answer, claiming a setoff for unpaid premiums, see page 1015 *supra*, was retained as Count II. We shall refer to the new Count hereinafter as "Count I."

The core/non-core distinction and its significance is an issue which we have avoided confronting since our decision in *In re Windsor Communications Group, Inc.*, 67 B.R. 692 (Bankr.E.D.Pa.1986), where we held that the most common species of adversary proceedings, "garden-variety accounts receivable cases," were core matters. We recognized that this occasioned a split from the decisions of our immediate predecessor, the Honorable William A. King, Jr. 67 B.R. at 694. However, we received solace from the fact that this result was consistent with that reached by the former Chief Judge of this Court, the Honorable Emil F. Goldhaber, in *In re Franklin Computer Corp.*, 50 B.R. 620 (Bankr.E.D.Pa.1985).

However, upon the retirement of Judge Goldhaber, our new brother, the Honorable Bruce Fox, embraced the stance of Judge King that such matters were non-core proceedings in *In re Earle Industries, Inc.*, 71 B.R. 919, 921–23 (Bankr.E.D.Pa.1987).

Our *Windsor* decision was based on our belief that the legal issue was a toss-up, but that the practical consideration of expediting matters of often great financial interest to debtors and needless waste of scarce judicial resources greatly favored the conclusion that accounts receivable matters should be adjudged to be "core" proceedings. 67 B.R. at 693–94, 699–700.

■ Our months on the bench have reinforced our initial views that determining matters to be non-core introduced nothing into the proceeding except submission to the most venal natural enemies of the judiciary: waste and delay. Fortunately, most attorneys appear to concur, and this case marks the first instance where counsel (and here it is only the Defendants' counsel) has requested us to succumb to our natural enemies. Frankly, it does not surprise us to see this issue rarely raised, because we fail to see what benefit inures to the party successfully raising it. We do intend to

broadly apply the holding of the district court in *In re Wicaco Machine Co.*, 60 B.R. 415, 417 (E.D.Pa.1986): if a litigant fails to raise the issue that a matter is non-core, then the failure of that party to raise it "cuts off the issue whether the proceeding was core or non-core." We were tempted to apply this reasoning in light of the belated invocation of this issue by the Defendants here.

However, once we reach the merits of the issue, at least as to No. 113, the Defendants have the better of the argument. Our decision in *Windsor* was necessarily limited to prevent its broad application far beyond "garden-variety accounts receivable proceedings" by the spectre of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Thus, we can follow *Windsor's* conclusion only where a similarly strong nexus exists between the bankruptcy case and the adversarial proceeding in issue, and where the state law issues presented are equally as simple as in such cases. 67 B.R. at 695–96.

The Trustee contends that the first Count of No. 113 is core in nature pursuant to 28 U.S.C. §§ 157(b)(2)(E) and (b)(2)(C),[2] and that the second Count is core in nature pursuant to 28 U.S.C. §§ 157(b)(2)(A), (b)(2)(B), and/or (b)(2)(O). He fails to address No. 114 at all. The statutory provisions cited by the Trustee provide as follows:

> (2) Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or

---

**2.** In a telephone conference call of July 24, 1987, resulting in an Order of that day granting extensions for the Defendants to file their Reply Brief until July 28, 1987, and for both parties until August 14, 1987, to pre-mark, file, and serve any additional exhibits relevant to Nos.

113 and 114, counsel for the Trustee indicated that he was no longer pursuing this Count. We do observe, however, that these statements do not officially write this Count off as of the present.

unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate; . . .

(E) orders to turn over property of the estate; . . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

It is certainly true that it is plausible to read the subsections of § 157(b)(2) broadly and conclude that the Trustee is correct. However, as we pointed out in *Windsor*, 67 B.R. at 695, a broad reading of the subsections of this statutory provision would result in a conclusion that practically every conceivable proceeding is a core proceeding. Tempting as reaching such a conclusion might be, we cannot agree that such a reading comports with the letter or spirit of *Marathon*, or with the Congressional intent of accommodation with *Marathon* which undoubtedly was an instrumental factor in the enactment of this strange and ambiguous statutory provision. Since this provision was enacted in response to *Marathon*, to conclude that § 157(b)(2) includes virtually everything, would, in the words of Judge Fox, cause us to "overlook the underlying premise of *Marathon*—which is recognition of the constitutional design of separation of powers implicit in Article III [of the Constitution]." *Earle Industries*, *supra*, 71 B.R. at 923.

■ The Defendants cite to two adversary proceedings in which bankruptcy courts, considering claims by Trustees (or debtors) against insurers raising issues of policy coverage similar to those enunciated in Count Two of No. 113, held that such proceedings were non-core in nature. *UNR Industries, Inc. v. Continental Insurance Co.*, 623 F.Supp. 1319, 1332 (N.D.Ill.1985); and *In re Guenther*, 65 B.R. 650, 651–52 (Bankr.D.Colo.1986). We discovered one case to the contrary, *In re Pied Piper Casuals, Inc.*, 50 B.R. 549 (Bankr.S.D.N.Y. 1085), but then ascertained that this decision had subsequently been reversed. *In re Pied Piper Casuals, Inc.*, 65 B.R. 780 (S.D.N.Y.1986). Therefore, we conclude that the unanimous weight of authority establishes that Count Two of No. 113 is non-core in nature.

Assuming that it is still viable, *but see* page 1017 & n. 2 *supra*, the claim in Count One of No. 113 and the claim in No. 114 present closer questions on the core/non-core issue. The relatively difficult state-law issue of coverage is not in issue in those counts. Both of these claims merely seek collection of dividends and cash surrender values due under the respective insurance policies. Hence, both are closely akin to accounts receivable actions. On the other hand, both do involve issues of interpretation of insurance law and contracts which are more complex than those usually encountered in a "garden-variety accounts receivable" action.

■ If these claims were all that were before us in these proceedings, we might well determine them to be core, consistent with the pragmatism of our approach in *Windsor*. However, the pragmatism of *Windsor* is itself undercut by the fact that we are compelled to handle part of one of the proceedings (No. 113) as a non-core matter.[3] Therefore, we have decided to treat all of the issues in Nos. 113 and 114 as non-core in nature.

**3.** This reasoning is, in turn, undercut by the observation that the other two cases involving the parties, Nos. 312 and 1077, are indisputably core proceedings per 28 U.S.C. § 157(b)(2)(F). Hence, we will not be able to unanimously classify all four proceedings as either core or non-core. However, since we cannot finally determine all issues in all of the cases, the fact that there are core procedings among those to be decided is probably immaterial. In our view, this bifurcation of issues between the same parties as core and non-core is testimony to the apparent lack of rational consequences arising from the differentiations imposed by 28 U.S.C. § 157. Obviously, the facts are in some respects common and the legal issues are comparable in all of these cases, and it would make good sense to have one court determine them all.

We cannot help but reflect on the irony of this conclusion when we compare this case to the proceedings in *In re Leedy Mortgage Co., Judge v. Burnhope, et al.*, 76 B.R. 440 (Bankr.E.D.Pa.1987), in which we recently filed an Opinion granting in part and denying in part a Motion by an insurer for summary judgment. The *Leedy Mortgage* case undoubtedly *did* present difficult issues of interpretation of a fidelity insurance policy and application of the pertinent legal principles to the facts of eleven separate claims, and we wrestled with that case for over two months. However, because no parties contested our power to determine this matter, we proceeded to treat it as a core proceeding and determine it ourselves. See 28 U.S.C. § 157(c)(2); and *Wicaco Machine, supra.*

■ The Society suggests that the claim set forth in Count One of No. 113 is not even a "related" matter, and therefore we should dismiss it entirely. The Society's theory seems to be that this claim is made on behalf of the employee-beneficiaries, and thus it is unrelated to the Debtor's bankruptcy case.

Whatever might be the "related to" test in other jurisdictions, the Third Circuit Court of Appeals has repeatedly held that the test " 'is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....*' " *In re Bobroff*, 766 F.2d 797, 802 (3d Cir.1985) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in both originals). This is not a difficult threshold for the Trustee to clear.

In our view, it is clear that the result of Count One of No. 113 could have at least an indirect impact on the Debtor. If the Debtor is successful in establishing that the Society's insurance policy covered the employees, this would eliminate the employees' $93,000.00 claims against the Debtor. This is, in our view, an effect which is not only conceivable, but very real.

We note that in *Leedy Mortgage, supra,* we were confronted with the insurers' de-fense that the Trustee lacked standing to litigate claims of coverage of direct losses to creditors and investors of the Debtor, even though the claims of these parties resulted in assertion of claims against the Debtor by the creditors and investors experiencing the losses in turn. We rejected that defense of the insurers there. *See Leedy Mortgage, supra,* 76 B.R. at 450, 451–53, 454, 457–58, 458–59. We reject a similar defense asserted by the Society here.

Thus, we conclude that Count One of No. 113 must be considered as a related, non-core proceeding and that, for practical purposes, we might as well treat all of the claims in these cases as non-core.

Having answered the first question posed in the July 2, 1987, Order, the answers to the next two readily follow from consideration of 28 U.S.C. §§ 157(c)(1) and (c)(2), which provide as follows:

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

■ Despite its inordinate delay in raising the issue, we cannot say that the Society has "consented" to allow this Court to determine these cases. While *Wicaco Machine* provides that silence may constitute assent, we cannot consider the Society's belated assertion of this issue as "silence."

■ Finally, since these matters are to be considered as non-core in nature, we must submit proposed findings of fact and conclusions of law to the district court. We would probably be compelled to produce our decision, even as to Nos. 312 and 1077, in substantially this form in any event. See Bankruptcy Rule (hereinafter referred to as "B. Rule") 7052, and Federal Rule of Civil Procedure (hereinafter referred to as "F.R.Civ.P.") 52(a).

## C. THE SOCIETY WILL NOT BE PERMITTED TO AMEND ITS COMPLAINT TO ADD COUNT I TO ITS COUNTERCLAIM

In order to prevail in its effort to justify the propriety of the addition of Count I (see page 1016 n. 1 *supra*) set forth in the Counterclaims asserted in its Amended Answer filed May 6, 1987, literally the eve of the May 7, 1987, trial date established in our Order of March 12, 1987, the Society must convince us of two things. First, it must establish that it has therein stated a claim which could be classified as a setoff, per 11 U.S.C. § 553(a), such that we should exercise our discretion to grant it relief from the automatic stay and allow it to assert this claim as a setoff. Secondly, it must also convince us that we either granted the Society leave to file such a pleading in our approval of the parties' Stipulation of May 4, 1987, or that such an amendment should be permitted pursuant to B. Rule 7015 and F.R.Civ.P. 15. Ultimately, it convinces us of neither, and therefore we shall proceed to grant the Trustee's Motion to strike this pleading.

We begin by analyzing the substance of the averments of Count I. The Society alleges therein the following two failings by the Debtor: (1) Breach of its contractual obligation to the Society to promptly forward premiums to it; and (2) Breach of its fiduciary obligation to the affected employees to notify them of the termination of the insurance contract. Therefore, the Society, in Count I, avers that, if it is found liable to the Trustee, the Debtor should be found liable over to it.

However, we would observe that, if the Debtor indeed did breach the contract by failing to forward premiums, the consequences would be either (a) Providing a defense to the Society against the Debtor's claim for liability; (b) Establishing a claim for premiums to be set off against the Society's liability; or (c) Both of the above.

Regarding the element of setoff (consequence (b) in the foregoing paragraph), the Society has already set this claim forth in its original Answer and Counterclaim, i.e., Count II of the Counterclaim in the Amended Answer. The Trustee, in his Brief, concedes that the claim of setoff averred in Count II is appropriate under 11 U.S.C. § 553(a) and hence that relief from the stay to assert this setoff is justified. This will be allowed. However, since this issue is already fully raised by the Society in Count II of the Counterclaim, there would appear to be no benefit to the Society to re-assert it in Count I.

Regarding the element of a defense to the Trustee's claim (consequence (a) in the paragraph referred to), it is difficult for us to perceive any sense in which this defense is not duplicative of defenses already asserted in the answer. If the Trustee caused the contract to lapse, then the Society would apparently be relieved from liability. Nothing can be gained by the circular assertion in Count I that, if the Society is liable to the Defendant, this is cancelled by a counter-liability of the Defendant to the Society.

Hence, all of the elements of the contractual breach prong of Count I appears redundant to defenses and claims asserted elsewhere in the original as well as the Amended Answer.

■ On the other hand, the prong of Count I asserting a breach of a fiduciary duty to the employees raises a new contention, but one that addresses only the relationship between the Debtor and its employees. It is totally unclear to us how such a breach, even if established, could be asserted by the Society on behalf of the employees.

With this backdrop, we consider the nature of setoff. As we pointed out in *In re*

*Lessig Construction, Inc.*, 67 B.R. 436, 441 (Bankr.E.D.Pa.1986), "the concept of setoff [is] applied restrictively in bankruptcy," as this concept runs counter to the basic tenet of bankruptcy furthering equality of treatment to all creditors. One of the "express restrictions" upon the allowance of a setoff "is that only a 'mutual debt' may be set off." *Id.*

We do not see how the Debtor's purported breach of a fiduciary obligation to its employees could in any sense be deemed "mutual" to the alleged breach of the Society of the insurance contract between the Debtor and it, which is the substance of the Debtor's claim in Count II of No. 113 and to which Count I is responsive.

Since one prong of Count I of the Counterclaim is redundant of contentions raised elsewhere in the Answer and the other prong lacks the mutuality necessary to allow setoff, there is no basis for allowing the Society to append this Count to its Answer.

There is, however, a procedural as well as substantive basis for disallowing this Amendment. Contrary to the assertions of the Society, we never dreamed that, in approving the parties' Stipulation for a continuance of a trial scheduled on May 7, 1987, in our Order of May 4, 1987, we were opening the door to further amendments to the basic pleadings in the case, i.e., either the Complaints or Answers. The reference in the Stipulation to allowance of "amended discovery and pleadings" must be read in the context of that Stipulation, which was to allow additional time for discovery and pleadings relevant to completion of discovery only. Obviously, the Trustee so interpreted it, because he immediately responded to the filing of this Amended Answer with a Motion to strike it.[4]

When the parties came before us on July 1, 1987, we confronted the Society's counsel with our view that he was guilty of subterfuge in interpreting the Stipulation in such a way as to allow his client to amend its Answer. We were reluctant to reward any benefits derived from subterfuge, but refrained from striking the Answer summarily because we felt that the liberal policy of B. Rule 7015 and F.R. Civ.P. 15 would possibly require us to allow the amendment in any event.

However, further research causes us to change our original view that the proposed amendment would, pursuant to F.R.Civ.P. 15, perforce be granted anyway. Although Rule 15 is to be liberally interpreted to prevent parties from being deprived of litigation of real claims on the basis of procedural technicalities, we would be consistent with this purpose in refusing to allow the Society to take unfair advantage of the fact that, due to a procedural technicality, it would be allowed to make an amendment in a circumstance where it would otherwise not be allowed to do so.[5] We now believe that the Society's delay in asserting Count I allows us to bar its assertion under the principle that "undue delay" in asserting an amendment is a well-established ground for denial of permission to amend. *See, e.g., Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir.1984); and *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 492 (3d Cir.1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). Thus, in *Cornell & Co. v. Occupational Safety & Health Review Comm.*, 573 F.2d 820 (3d Cir.1978), when the government sought to amend a complaint four months

---

4. We must consider this Motion in the context of the Trustee's course of conduct in these cases, which has been courteous, rather than opportunistic. It will be recalled that he agreed to open the defaults which he previously obtained in Nos. 312 and 1077. See page 1015 *supra.* Thus, we consider this Motion with more than the usual respect than we would give to such an apparently-technical pleading.

5. This is another reason, utilizing a technicality to offset a technicality, why the assertion of Count I in the Amended Answer is not justified despite the Stipulation. This Counterclaim, as well as the Society's original Counterclaim, was filed prior to any attempt to obtain relief from the automatic stay which we held, in *Lessig Construction, supra*, 67 B.R. at 443–44, was prerequisite. Pleadings filed in violation of the stay are void *ab initio. See, e.g., In re Clark*, 69 B.R. 885, 889–90 (Bankr.E.D.Pa.1987).

after its original filing and nine days before trial, leave to amend was denied. *See also Oy Tilgmann, AB v. Sport Publishing Int'l, Inc.,* 110 F.R.D. 68, 70–72 (E.D. Pa.1986) (amendment to counterclaim attempted fourteen months after the case was commenced and subsequent to close of discovery denied); *Equal Employment Opportunity Comm'n v. Hay Associates,* 545 F.Supp. 1064, 1070 (E.D.Pa.1982) (per BECKER, J.) (attempted amendment to answer denied for delay); and *Rosenwald v. Vornado, Inc.,* 70 F.R.D. 376, 377 (E.D.Pa. 1976) (attempted addition of counterclaim denied because of delay).

The proceeding in issue, No. 113, was filed about fifteen months prior to the filing of the Amended Answer. The original Answer was filed thirteen months prior to the Amended Answer. The Amended Answer was filed after discovery had been completed and one day before trial was scheduled per two preceding pre-trial Orders. Under these circumstances, it is clear that the proffered amendment could and should be refused due to the unjustified delay of the Society in asserting it.

Since either the substantive or procedural shortcomings in the stance of the Society could justify our granting the Trustee's Motion to strike its Answer, certainly the combination of both shortcomings should result in our doing so.

We should finally observe that we are, to some degree, appalled at the series of delays which have transpired in this case. Thus, we can allow no further delays and dispensations, and the parties' counsel must be prepared to strictly comply with our Orders or face sanctions.

An appropriate Order indicating our disposition of the issues raised in our July 2, 1987, Order, and reiterating the sentiments expressed in the foregoing paragraph shall be issued.

## ORDER

AND NOW, this 13th day of August, 1987, upon consideration of the Briefs of the parties addressing the issues set forth in paragraph two of our Order of July 2, 1987, it is hereby ORDERED as follows:

1. The proceedings at Adversary Nos. 86–0113K and 86–0114K are both determined to be non-core proceedings.

2. In resolving these proceedings, the Court shall submit proposed findings of fact and conclusions of law to the district court rather than making final determinations.

3. The Trustee's Motion to Strike Defendant's Amended Answer, Affirmative Defenses, and Counterclaim in Adv. No. 86–0113K is GRANTED, and the said pleading shall be STRICKEN.

4. The Defendant is granted relief from the automatic stay to litigate the Counterclaim set forth in its original Answer.

5. The Trial of these matters and Adversary Nos. 312 and 1077 shall take place on TUESDAY, SEPTEMBER 1, 1987, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106. *No continuances shall be permitted.*

6. The parties are reminded that they have until August 14, 1987, to pre-mark, file, and serve any additional exhibits or witnesses and until August 21, 1987, to submit pre-trial Memoranda relevant to Adv. Nos. 86–0113K and 86–0114K. *No extensions shall be permitted* and exhibits and witnesses not identified will not be accepted or heard at trial.

7. In all respects not specifically heretofore mentioned, our Order of July 2, 1987, shall remain in full force and effect.

8. Counsel shall be subject to sanctions if there are any deviations from this Order.