**MOHAMMED HAMED by his authorized agent WALEED HAMED, Plaintiff/Counterclaim Defendant**

**v.**

**FATHI YUSUF and UNITED CORPORATION, Defendants/Counterclaimants**

**v.**

**WALEED HAMED, WAHEED HAMED, MUFEED HAMED, HISHAM HAMED, and PLESSEN ENTERPRISES, INC., Counterclaim Defendants**

Civil No. SX-12-CV-370

Superior Court of the Virgin Islands

Division of St. Croix

July 22, 2014

BRADY, *Judge*

## MEMORANDUM OPINION

(July 22, 2014)

THIS MATTER is before the Court on Defendant/counterclaimant Fathi Yusuf's Motion to Nullify Plessen Enterprises, Inc.'s Board Resolutions, to Avoid Acts Taken Pursuant to those Resolutions and to Appoint Receiver and Brief in Support ("Motion"), filed May 20, 2014;

and Plaintiff's Opposition, filed May 27, 2014. For the reasons that follow, Defendant's Motion will be denied.

## FACTUAL BACKGROUND

Plessen Enterprises, Inc. ("Plessen") is a closely held corporation jointly and equally owned by the Hamed and Yusuf families. Motion, at 1.[1] Plessen owns various assets, including the real property on which Plaza Extra-West is located. *Id.* Plessen is a Counterclaim Defendant in this case by virtue of the Counterclaim of Defendants Fathi Yusuf and United Corporation.

On April 28, 2014, Plaintiff served Defendant Yusuf with a Notice of Special Meeting of Board of Directors of Plessen Enterprises, Inc. ("Notice") to be convened at 10:00 a.m. on April 30, 2014. Motion, at 4 (Exhibit A).[2] On April 29, 2014, Yusuf responded to the Notice in writing by pointing out the deficiencies of the Notice and demanding that the meeting not take place. *Id.* (Exhibit B). Defendant Yusuf moved to enjoin the meeting by emergency motion filed at 8:19 a.m. on April 30, 2014. That motion came to the attention of the Court after the meeting had concluded and the motion had become moot.

---

[1] Fathi Yusuf states that he is personally the owner of 14% of Plessen's stock. Motion, Exhibit K, ¶ 1.

[2] Defendant Yusuf claims that his son Maher ("Mike") is a director of Plessen, and that failure to notify him of the special meeting renders all actions therein null and void. Motion, at 6, n.3. As proof that Mike is a director, Yusuf cites a February 14, 2013 "List of Corporate Officers for Plessen" from the electronic records of the Department of Licensing and Consumer Affairs. Motion, at 6, n.4, Exhibit D; and presents a Scotiabank account application information form wherein Mike is designated "Director/Authorized Signatory" on Plessen's account.

Plaintiff denies that Mike is a director, relying upon Plessen's Articles of Incorporation which name Mohammad Hamed, Waleed Hamed, and Fathi Yusuf as the only three directors. Opposition, Exhibit A. Plessen's By-Laws state that the number of directors can be changed only by majority vote of current directors. Opposition, Exhibit B, Section 2.2. Plessen director Waleed Hamed declares: "There have been no resolutions of the Board or votes by the shareholders of Plessen Enterprises, Inc. that have ever changed these three Directors as provided for in the articles of incorporation over the last 26 years." Opposition, Exhibit 1, Declaration of Waleed Hamed. Defendant Yusuf concurs: "Until the Special Meeting of the Board of Directors of Plessen was held on April 30, 2014, there had no meeting of the directors or shareholders of Plessen since its formation in 1988." Motion, Exhibit K, ¶ 15.

As such, and for the limited purpose of addressing this Motion, the Court finds that Plessen has three directors: Mohammad Hamed, Waleed Hamed, and Fathi Yusuf.

At the special meeting, Plessen's board of directors, over director Yusuf's objection, adopted Plessen Enterprises, Inc. Resolutions of the Board of Directors ("Resolutions") (Motion, Exhibit G) wherein the board: 1) ratified and approved as a dividend the May 2013 distribution of $460,000 to Waleed Hamed; 2) authorized Plessen's president, Mohammad Hamed, to enter into a lease agreement ("Lease") with KAC357, Inc. for the premises now occupied by Plaza Extra-West; 3) authorized the retention of Attorney Jeffrey Moorhead to represent Plessen in defense of the Counterclaim filed against it in this action and in defense of the separate action (Yusuf v. Hamed et al.) filed relative to the May 2013 distribution to Waleed Hamed; 4) authorized the president to issue additional dividends to shareholders, up to $200,000, from the company bank account; and 5) removed Fathi Yusuf as Registered Agent, to be replaced by Jeffrey Moorhead.

By his present Motion, Defendant Yusuf objects to Plaintiff's service of the Notice of the special meeting one business day in advance as "an obvious attempt to avoid judicial scrutiny of an action that . . . was unlawful and an end-run around pending litigation between the Hamed and Yusuf families." Motion, at 4-5. Further, Defendant argues that the Notice violated Plessen's By-Laws which require that the corporate secretary, Yusuf himself, issue notices of meetings. Motion, at 4 (Exhibit C, §§ 3.4, 7.2).

Plaintiff responds that Plessen's By-Laws require only that the meeting take place on at least one day's notice if the directors are served by hand-delivery. Opposition, at 1-2 (*citing* Exhibit B, § 2.6). Since director Yusuf was personally served with the Notice two business days prior to the special meeting, the By-Laws' notice requirement was satisfied. Plaintiff notes that the By-Laws allow the president to serve notice upon directors if the secretary "is absent or refuses or neglects to act." Opposition, Exhibit B, § 7.2.B).

Defendant Yusuf's Motion focuses on the substance of the Resolutions adopted by the board of directors at the April 30, 2014 special meeting. Primarily, he argues that the board's approval of the Lease with KAC357, Inc., a newly formed entity of the Hamed family, is not in Plessen's best interests and constitutes an act of self-dealing by the interested directors designed to position the Hamed family to benefit upon the proposed

42

winding-up of the Hamed-Yusuf partnership.[3] Defendant notes that a corporate transaction involving interested directors can survive only if it meets the "intrinsic fairness test," in that ". . . the transaction was entirely fair to the corporation." Motion, at 11, 10.

Defendant Yusuf argues that interested directors Mohammad Hamed and Waleed Hamed cannot demonstrate that the Lease is intrinsically fair to Plessen for the following reasons: 1) The Lease does not become effective "until some unspecified date in the future," namely when the current tenant, Plaza Extra-West, ceases operations. This provision creates a "poison pill . . . designed to dissuade any outside investor from bidding to acquire the Plessen property that is subject to the Lease." (Motion, at 12.) 2) Unlike most commercial leases, the Lease requires no personal guarantees, an omission which could jeopardize Plessen's ability to collect outstanding rent because the "Hameds can simply walk away." (*Id.* at 13.) 3) The Lease's assignment clause allows KAC357, Inc. to freely assign its interest as tenant without the consent of Plessen, raising the potential of an unqualified future tenant. (*Id.* at 14.) 4) The Lease contains a rent structure with increases pegged to the Consumer Price Index, which does not allow Plessen the ability to renegotiate rents in the event KAC 357, Inc. exercises its option to renew after the initial ten-year term has concluded. (*Id.*) 5) The insurance provisions of the Lease do not require the tenant to maintain hazard insurance in the amount of full replacement value, including windstorm coverage. *Id.* at 14-15.

Defendant Yusuf also challenges other actions of the Plessen board, including its retention of Attorney Jeffrey Moorhead "with absolutely no discussion at the sham meeting." Motion, at 16.

Yusuf also objects to the board's authorization to pay shareholder dividends, and asks the Court to expand the scope of the April 25, 2013 Preliminary Injunction to enjoin future payment of dividends to Plessen's shareholders without vote of shareholders. *Id.* at 17.

Defendant Yusuf further notes that procedural requisites of 13 V.I.C. §§ 52-55 were not met in the board's replacement of Yusuf as Plessen's resident agent, and argues that the board action should be nullified accordingly. *Id.* at 18.

_____

[3] Competing proposals for the winding-up of the Hamed-Yusuf partnership are pending before the Court. One feature of Plaintiff Hamed's proposal contemplates Plaintiff continuing to operate Plaza Extra-West in its existing premises on real property of Plessen.

43

Defendant Yusuf finally asks the Court to appoint a receiver to oversee the dissolution of Plessen due to the mutual distrust between the Yusuf and Hamed families and the unworkable managerial situation that is the result. *Id.*

Plaintiff responds that Plessen's Lease with KAC357, Inc., contingent on the cessation of Plaza Extra-West operations, is objectively fair and benefits Plessen in that it ensures that the corporation's property will not become vacant, and provides a continued rental income stream to Plessen. Opposition, at 4. In light of Yusuf's objection to the lack of personal guarantees by the principals of KAC357, Inc., Plaintiff has caused the Lease to be amended to provide his own personal guarantee in the event of the monetary default of KAC357, Inc. *Id.* Exhibit 2.

Plaintiff asserts that the Lease provision setting initial rent at $710,000 per year is commercially reasonable as is pegging increases, in the manner of many commercial leases, to the Consumer Price Index. *Id.* at 4. Plaintiff discounts Defendant's concern regarding the Lease's assignment clause, noting that KAC357, Inc. remains liable for performance of the Lease terms, now personally guaranteed by Plaintiff. *Id.* at 4.

Plaintiff has responded to Defendant's concern regarding hazard insurance coverage by increasing to $7,000,000 the property insurance coverage on the premises, including as an escalator clause such that Plessen will never become a co-insurer of the property. *Id.* Exhibit 2.

In sum, Plaintiff contends that the Lease approved at the special meeting of the Plessen board, notwithstanding its benefits to interested directors, is intrinsically fair to Plessen.

Plaintiff argues that the board's decision to remove Yusuf as Plessen's registered agent was appropriate and necessary in light of Yusuf's activity to the detriment of Plessen. Specifically, Yusuf initiated legal action against Plessen, served legal process on himself as resident agent without notifying Plessen's board, and then represented to the Court that Plessen was in default. *Id.* at 4-5.

Similarly, Plaintiff submits that the board's retention of Attorney Moorhead for purposes of defending Plessen in litigation initiated against it by Yusuf in this case and by Yusuf's family in the derivative action, not as general counsel as Defendant asserts, serves the best interests of Plessen. *Id.* at 5.

Plaintiff argues that the legality of the Resolution ratifying the prior distribution to Waleed Hamed as a corporate dividend, now the subject of the derivative action pending before Judge Willocks, and of the Resolution authorizing additional dividend payments are more appropriately addressed in the shareholders' derivative litigation. *Id.*

Finally, as to Defendant's claim that the appointment of a receiver is a necessity to effectuate the dissolution of Plessen, Plaintiff argues that "a receiver is not needed . . . as the corporation functions just like it is supposed to" and produces "a positive cash flow." *Id.* at 6. Even if the Court were to appoint a receiver, Plaintiff submits that, pursuant to 13 V.I.C §§ 193-95, such appointment would not undo the board's prior actions. *Id.* at 5.

## DISCUSSION

As a threshold matter, the Court considers whether Plaintiff and Plessen's board of directors followed proper procedures, in accordance with Plessen's By-Laws, in scheduling and conducting the April 30, 2014 special meeting on two days' notice.

When determining the legality of a corporation's actions, courts in the Virgin Islands examine whether the language of the corporation's bylaws "is clear and unambiguous . . . [and] we will follow their plain meaning and abstain from imputing language or interpretations that are not in accordance with their plain meaning." *Weary v. Long Reef Condominium Association*, 57 V.I. 163, 169-70 (V.I. 2012). A "corporation's by-laws establish rules of internal governance, which, like contracts and statutes, are construed according to their plain meaning within the context of the document as a whole." *Id. citing Isaacs v. American Iron & Steel Co.*, 690 N.W.2d 373, 376 (Minn. Ct. App. 2004).

Section 2.6 of Plessen's By-Laws (Opposition, Exhibit B) states that "Written notice of each special meeting of the Board of Directors shall be given to each Director by . . . hand-delivering that notice at least one (1) day before the meeting." Plessen's board effectuated hand-delivered service of the Notice upon Defendant Yusuf on April 28, 2014, two days before the special meeting, clearly satisfying the plain language of Plessen's By-Laws.

As to Defendant's contention that only he, as Plessen's secretary, was authorized to give notice of corporate meetings, § 7.2(B) of the By-Laws

45

allows Plessen's president to give such notice "if the Secretary is absent or refuses or neglects to act." Nothing has been presented to suggest that Defendant Yusuf, as Plessen secretary, was absent or refused or neglected to act, but it is clear that any request to Yusuf to provide notice of the meeting would have been futile. It is not necessary to determine whether the circumstances constituted a triggering of the right of the corporate president to provide notice, as the purpose of the notice provision is for all directors to be timely advised of the calling of a special meeting. That occurred here as all directors, including Yusuf, attended the special meeting. It is also noted that the By-Laws provide (§ 7.2.C) that a director may waive notice of a meeting. Yusuf's appearance and participation in the meeting may constitute a waiver of the notice requirement.

### 1. The Lease

More importantly, the Court must examine the "lynchpin" of Plaintiff's plan for winding-up the Hamed-Yusuf partnership, the Lease between Plessen and KAC357, Inc. Defendant argues that the Lease execution by Plessen's board, dominated by the Hamed family, with KAC357, Inc., controlled exclusively by the Hamed family, constitutes a "blatant act of self-dealing."

The general rule is that "a majority shareholder has a fiduciary duty not to misuse his power by promoting his personal interest at the expense of the corporate interests." *United States v. Byrum*, 408 U.S. 125, 92 S. Ct. 2382, 33 L. Ed. 2d 238 (1972); *see also Overfield v. Pennroad Corporation*, 42 F. Supp. 586 (E.D.Pa.1941). Adherence by the majority interest to a fiduciary duty of strict fairness is particularly critical in the context of a closely-held corporation.

Controlling shareholders are allowed to engage in self-dealing if the transaction is intrinsically fair to the corporation *See Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 719-20 (Del. 1971). However, "those asserting the validity of the corporation's actions have the burden of establishing its entire fairness to the minority stockholders, sufficient to 'pass the test of careful scrutiny by the courts.' " *Matter of Reading Co.*, 711 F.2d 509, 517 (3d Cir. 1983) (*citing Singer v. Magnavox Co.*, 380 A.2d 969, 976-77 (Del.1977).

In assessing the fairness of a corporate transaction, courts consider the transaction's price or consideration involved as well as the transaction's effect on the corporation's *status quo* following the

46

implementation of the transaction. *See In re Athos Steel and Aluminum, Inc.*, 71 B.R. 525 (B.K. E.D. Pa. 1987); *Reifsnyder v. Pittsburgh Outdoor Advertising Co.*, 396 Pa. 320, 152 A.2d 894 (1959).

■ Courts in the Third Circuit are less prone to examine the suspicious circumstances surrounding the transaction or the advantage conferred on the self-dealing party. *In re Athos Steel and Aluminum, Inc.*, 71 B.R. at 542 ("The real crux of Athos Steel minority shareholders' objection is their assertion that the transaction was designed primarily to give D. Wechsler control of Athos Realty. However, I conclude that the intent to control Athos Realty, by itself, was not improper as to the Athos Steel minority shareholders.")

Instead, courts examine the adequacy and fairness of the consideration when determining whether the transaction was objectively in the corporation's best interest. ("Nothing in the evidence indicated that the purchase price of the Athos Realty stock was unduly high, thus granting Ash and L. Wechsler a windfall profit.") *Id.* at 541.

After carefully scrutinizing the Lease between Plessen and KAC357, Inc., the Court concludes that the transaction is intrinsically fair to Plessen and that the transaction serves a "valid corporate purpose." *Id.* at 542. The Court looks not to the benefit conferred upon the majority directors but rather on the potential beneficial or negative effects on the corporation. Defendant's contention that the Lease is unfair because it does not become effective until "some unspecified date in the future" reflects Defendant's concern with the advantage the Hamed family receives in winding up the partnership.

Business decisions to maintain the status quo have passed the intrinsic fairness test in several circumstances. *Cf Enterra Corp. v. SGS Associates*, 600 F. Supp. at 687-90 (upholding a "standstill" agreement); *Reifsnyder v. Pittsburgh Outdoor Advertising Co., supra.* In *In re Athos Steel*, the Court held that maintaining the status quo "was perfectly fair and proper as to the Athos Steel minority shareholders." *In re Athos Steel and Aluminum, Inc.*, 71 B.R. at 542.

The Lease states that "there is currently a partnership between Fathi Yusuf and Mohammad Hamed operating a grocery business in the Demised Premises. The Tenant shall not be granted possession of the Premises so long as the partnership is in possession . . ." Lease, ¶ 2.3.4. The Court does not regard this Lease provision as detrimental to Plessen. This provision maintains the status quo, protecting Plessen from the

prospect of holding vacant commercial property and preserving the right of the Hamed-Yusuf partnership to continue to operate its Plaza Extra-West store, as the partnership winds up. Further, it guarantees future income stream to Plessen (for a minimum term of ten years, with options that may extend the rental income for 30 years. Lease, ¶¶ 2.1; 2.5).

■ By demonstrating that the corporate action effectively maintains the status quo and insures to Plessen long-term rental income, Plaintiff has met his burden to establish that the Lease is intrinsically fair to Plessen. This finding disregards any benefit to the majority directors and instead determines the intrinsic fairness of the transaction to Plessen, which benefits from a long-term guaranteed income stream notwithstanding the imminent dissolution and cessation of business of the Hamed-Yusuf partnership, which might otherwise result in Plessen facing the prospect of holding vacant its large commercial space on St. Croix's west end in a depressed economy.

Defendant does not argue that the Lease rent ($55,000 per month) is unfair (as it comports with the rent set for the partnership's Plaza Extra-East store by United Corporation). Rather, Defendant does object to rent increases being pegged to the Consumer Price Index. However, this is a relatively common feature in commercial leases and is not deemed unreasonable. Therefore, the consideration Plessen is to receive under the Lease is deemed reasonable. *See In re Athos Steel and Aluminum, Inc.*, 71 B.R. at 541.

The legitimate concern of Defendant raised in reference to the lack of a personal guarantee is resolved by Plaintiff's assurance of the Lease amendment by which Hamed will personally guarantee the tenant's performance. Opposition, Exhibit 2. The Court considers such a guarantee to be a necessary component of the determination that the Lease is intrinsically fair to Plessen.

Despite the lack of civility and mutual respect demonstrated again between the partners by Plaintiff's clandestine operation to notice and conduct the Plessen special meeting and approve the Lease with the new Hamed entity, Plaintiff has met his burden to establish that the Lease is intrinsically fair, from a business standpoint, to Plessen and its minority shareholders.

## 2. The Distribution

Defendant objects to the board's Resolution ratifying and approving as a dividend the May 2013 distribution of $460,000 to Waleed Hamed. This

distribution is part of the subject matter of a shareholders derivative action currently pending before Judge Harold Willocks (*Yusuf v. Hamed et al.*, SX-13-CV-120). As such, the Court declines at this time to make any findings of fact or legal determinations regarding the propriety of this distribution, as the resolution of this issue is more appropriately before another judicial officer.

### 3. The Retainer

In objecting to Plessen's decision to retain Attorney Jeffrey Moorhead as counsel for two matters in litigation, Defendant argues that he was not consulted, that Attorney Moorhead received a retainer check prior to the April 30, 2014 meeting, and that there was no discussion concerning Attorney Moorhead's qualifications. Plaintiff responds that the board voted to retain Attorney Moorhead to defend Plessen in the instant action and the shareholders derivative suit only, not as corporate general counsel.

In a different context, in *Cay Divers, Inc. v. Raven*, 627 F. Supp. 453, 22 V.I. 158, 165 (D.V.I. 1998), the District Court held that ". . . the mere fact that an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney, capable of binding the carrier" (*citations omitted*). While *Cay Divers* dealt with the question of whether a settlement agreement of an insured bound the insurance company that retained counsel to represent the insured, it also sets forth the principle that a corporation can limit an attorney's scope of representation to a particular action.

In this case, Plessen retained and authorized payment to Attorney Moorhead for the expressly defined and limited purpose of defending Defendants' Counterclaim against it in this action and in defending Plessen's interests in the derivative action brought by Defendant Yusuf's son. Clearly, it is in Plessen's best interests to have legal representation in litigation against it. Plessen's By-Laws neither address nor require that counsel retained for particular limited purpose have his qualifications extensively vetted. *See* Opposition, Exhibit B, § 7.3 (pertaining to board appointed general corporate counsel). As such, the Court will not interfere with the board's decision to retain Attorney Moorhead in defending Plessen in the referenced actions.

### 4. The Dividends

During the April 30, 2014 special meeting, the Plessen board authorized dividend payments of $100,000 each to Hamed and Yusuf. Defendant asks the Court to expand the scope of the existing Preliminary Injunction entered in this case with respect to the Hamed-Yusuf partnership to preclude the issuance of future dividends to Plessen shareholders without prior shareholder approval. Plessen's interests and operations are not a subject of the Preliminary Injunction.

 The dividend in question was paid to both Hamed and Yusuf.[4] As such, there is nothing intrinsically unfair to Plessen, Plessen's minority director or Plessen's shareholders with relation to the issuance of these dividends. The Court will not nullify the issuance of dividends to Plessen shareholders on the basis of the reasons asserted, and will not at this time extend the Preliminary Injunction to cover assets and operations of Plessen, that do not have a direct present impact on the Hamed-Yusuf partnership and the operations of the Plaza Extra Supermarkets.

### 5. The Resident Agent

Defendant objects to the board's decision to remove Yusuf as Plessen's resident agent, arguing that the procedures set out in 13 V.I.C. §§ 52-55 have not been followed, in that the corporate secretary did not first sign off on the removal, and the board did not obtain, file and certify the resignation of the current resident agent. Motion, at 18. Plaintiff responds by arguing that Yusuf sued Plessen, "served himself without telling anyone else . . ." and then argued to the Court that Plessen was in default. Opposition, at 4-5.

 Defendant has not replied to Plaintiff's Opposition and this allegation of Plaintiff is unrefuted. If accurate, Yusuf's actions appear to be in breach of his the fiduciary obligation owed to Plessen as a director and as Plessen's registered agent. *See In re Fedders North America, Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009) (A breach of "the duty to act in good faith . . . may be shown where the director 'intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.' ").

---

[4] Notwithstanding the question as to whether Mohammed Hamed and Fathi Yusuf individually each own 50% of Plessen stock, it is undisputed that the stock is owned 50% each by the Hamed and Yusuf families.

Further, Defendant Yusuf's contention that he, as secretary, needed to first sign off on his own dismissal before being removed as resident agent, is unpersuasive, and would tie the hands of a corporate board in the face of a renegade a corporate officer who would be permitted to act with impunity, protected by a corporate procedural formality — an unworkable scenario that was clearly not intended by the Legislature.[5]

On the basis of the facts and argument of record, the Court will not rescind the board's Resolution to remove Yusuf as Plessen's resident agent. The record is devoid of information concerning the implementation of the Resolution's directive that "the President shall report to the USVI Government that henceforth, Jeffrey Moorhead shall be the Registered Agent," and no findings are made with regard to such reporting.

### 6. The Receiver

 Defendant argues that Plessen's corporate deadlock requires the appointment of a receiver to supervise its liquidation. Motion, at 18.

> Among other situations which may warrant or require a court of equity to appoint a receiver to liquidate a solvent corporation is a deadlock between contending factions seeking to control and manage a corporation, abandonment of corporate functions, failure of corporate purposes, and gross fraud and mismanagement on the part of directors and controlling stockholders involving a breach on their part of the fiduciary or quasi-fiduciary duty owed to minority stockholders.

*Campbell v. Pennsylvania Industries*, 99 F. Supp. 199, 205 (D. Del. 1951).
 Recognizing the persistent deadlock between the parties, it is nonetheless premature to appoint a receiver for Plessen at this time. The winding-up of the Hamed-Yusuf partnership must take priority over Plessen's (relatively modest) internal disputes. When the Hamed-Yusuf partnership winding-up process is established and in effect, the need for

---

[5] "Upon the filing of two copies of such resolution in the office of the Lieutenant Governor, each signed by the president or vice-president and the secretary or an assistant secretary of the corporation and sealed with its corporate seal, the Lieutenant Governor shall certify one copy under his hand and seal of office and the certified copy shall be filed in the office of the clerk of the district court in the judicial division in which the articles of incorporation are filed." 13 V.I.C. § 52.

and the propriety of a Plessen receivership may be revisited as may then be appropriate.

## CONCLUSION

The Court finds that Plaintiff did not violate Plessen's By-Laws in providing Notice of the April 30, 2014 special meeting of the Plessen board of directors. The Lease between Plessen and KAC357, Inc. according to its terms, with Hamed's personal guarantee of the tenant's performance, is intrinsically fair to Plessen. The May 2013 distribution to Waleed Hamed, ostensibly approved and ratified as a shareholder dividend at the April 30, 2014 special meeting, is the subject of the derivative action pending before Judge Willocks where its validity can be more appropriately determined. The board did not violate Plessen's By-Laws by retaining Attorney Jeffrey Moorhead to defend Plessen against Defendant's Counterclaim in the instant action and in the shareholder derivative action. The dividends authorized at the April 30, 2014 meeting, shared equally between Hamed and Yusuf, will not be disturbed. Likewise, the Court will not rescind the board's Resolution to remove Hamed as Plessen's resident agent. At this stage, the Court will not appoint a receiver to oversee the liquidation of Plessen.

In consideration of the foregoing, an Order will enter simultaneously consistent with this Memorandum Opinion.